[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 27, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11148
Non-Argument Calendar

_____

BIA Nos. A78-603-071 & A78-603-072

LUIS HELADIO ACUNA ROMERO,
BLANCA CECILIA JIMENEZ GOMEZ,
ANGELICA JOHANA ACUNA JIMENEZ,
LUIS ALEJANDRO ACUNA JIMENEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 27, 2007)**

Before BLACK, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

## I.

Luis Heladio Acuna Romero ("Luis"), along with his wife, Blanca Cecilia Jimenez Gomez, and his children, Angelica Johana Acuna Jimenez and Luis Alejandro Acuna Jimenez (collectively, "the Acunas"), all citizens of Colombia, appeal the decision of the Board of Immigration Appeals ("BIA") denying asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c).

## II.

Luis arrived in the United States as a non-immigrant visitor for pleasure on March 30, 1999, with authorization to remain until September 29, 1999. His wife and children arrived as non-immigrant visitors for pleasure on September 7, 1999, with authorization to remain until March 6, 2000. On December 7, 2000, the Acunas filed an application for asylum and withholding of removal. They stated in their application that they had "suffered persecution, kidnap[ping], and assassination in our famil[y]" at the hands of the National Liberation Army ("ELN") on account of Luis's political opinions. The asylum application stated an uncle had been threatened and killed during an attempted kidnapping in January 1999 and another uncle had property stolen from his farm and his workers killed.

Luis claimed that the family was targeted because of his membership in the Conservative Party and his opposition to the ELN's ideals. The application explained that, in the Conservative Party, Luis worked to "defend democracy and human rights against terrorism and communism." In response to the threats to the family, the Acunas children were sent to Ecuador for a time. The asylum application also stated that the Acunas believed that they would be killed if they returned to Colombia. The application indicated it was being filed more than one year after the applicants arrived in the United States because lawyers had informed Luis that "Colombians were not granted asylum and that [their] case did not deserve it."

On March 18, 2004, the Immigration and Naturalization Service ("INS")[1] issued a Notice to Appear, charging that the Acunas were subject to removal because they remained in the United States longer than permitted. The Acunas provided evidence to the Immigration Judge ("IJ"), including a letter certifying Luis's involvement in a campaign to elect Andres Pastrana in the 1997 presidential election, Amnesty International articles, and a 2004 State Department Country Report on Human Rights Practices for Colombia.

---

[1] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, Stat. 2125. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department.

Luis testified before the IJ that he and his wife came to the United States on March 30, 1999. His wife later flew to Ecuador, where the children were living with relatives, and brought them to the United States on September 7, 1999. Before coming to America, Luis met with the Conservative Party on a weekly basis and engaged in marches on behalf of political candidates. Luis testified that he began receiving threatening telephone calls to his home in January 1997. The callers, who identified themselves as members of the ELN, told him that he would be killed if he continued to support the Conservative Party. He testified to receiving a total of six calls between January 1997 and March 1999, though he answered only two of the calls while his wife answered the other four. After receiving the two calls, Luis went to the police, but the police did not take a complaint because Luis could not verify the calls. Luis said he received a third call in July 1998.

Luis also testified that on September 3, 1998, the Acunas were visiting a farm belonging to their uncle when uniformed members of the ELN arrived and threw them to the ground. The family was threatened and Luis was kicked in the stomach. The ELN members then killed two farm workers and stole some property as a "war tax." According to Luis, the incident was not reported because the uncle did not want to be threatened further. Luis also testified that on January 20, 1999, the ELN tried to kidnap another one of his uncles, who was killed when he

4

resisted. Luis was not present, but stated that the kidnappers likely wanted money. Finally, Luis stated that he received another threatening telephone call from the ELN in March 1999.

During the hearing, Luis admitted that he had told an immigration officer during his asylum hearing that he had received threatening telephone calls "once every 15 days, and then once a week." When asked to clarify, Luis stated that he only received four calls and his wife received two calls. He was then reminded that he had previously testified that he received two calls and his wife had received four calls. Luis then stated that he had received two calls and his wife four. Luis testified that he did not previously mention getting kicked in the stomach at his uncle's farm because he "didn't have a lot of experience doing those papers, [he] didn't think it was necessary" and "overlooked it." Furthermore, Luis told an immigration officer during his asylum hearing that the ELN requested 15 million pesos during the incident on his uncle's farm. He admitted during the removal hearing that he had made up this amount "[b]ecause they took things of value from the house." Finally, Luis testified that he did not seek to move his family to another part of Colombia because "the guerillas are all over."

The IJ ruled that the application for asylum was time-barred and the Acunas had not demonstrated exceptional circumstances to justify an untimely filing. The IJ then found that Luis lacked credibility because of the inconsistencies between

5

his testimony, his interview with an asylum officer, and the asylum application, and because of testimony Luis had offered regarding his attempt to obtain legal papers from a man in a parking lot. The IJ ruled that even if Luis's statements were taken as truthful, the Acunas were not entitled to relief because the evidence of persecution was insufficient. The IJ also denied withholding of removal because it required a higher standard of proof. Finally, the IJ denied relief under CAT because it did not find that the Acunas had shown a likelihood that they would be tortured in Colombia.

The Acunas filed a notice of appeal with the BIA. The BIA agreed with the IJ that the application for asylum was untimely and that the Acunas had failed to demonstrate that their late filing was excused. The BIA also agreed with the IJ's adverse credibility determination because of the inconsistencies with regard to the number of telephone calls, the failure to mention the assault at the farm or to report the incident to the police, and the failure to corroborate any political activity. The BIA also noted that even if Luis had testified credibly, the incidents he described did not amount to persecution. Furthermore, the BIA agreed with the IJ that the Acunas failed to establish eligibility for relief "especially in light of the lack of corroboration." Thus, the BIA dismissed the appeal.

The Acunas then petitioned this court for review.

## III.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent the BIA's or IJ's decisions were based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The BIA's factual determinations are reviewed under the substantial evidence test, and we must affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record as a whole." Al Najjar, 257 F.3d at 1283-84. The IJ's factual determinations, however, are reviewed under the "highly deferential substantial evidence test," which requires us to "view the record in the light most favorable to the [IJ's] decision and draw all reasonable inferences in favor of that decision." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006); Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). We "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1284 (quoting Lorisme v. INS, 129 F.3d 1441, 1444-45 (11th Cir. 1997)). Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (quotation omitted); see also Silva v. U.S. Att'y Gen., 448 F.3d

7

1229, 1236 (11th Cir. 2006).

**IV.**

On appeal, the Acunas first argue that the BIA erred in denying their asylum claim as statutorily time-barred. Aliens seeking asylum are statutorily required to file their application within one year of entering the United States. 8 U.S.C. § 1158(a)(2)(B). Nonetheless, an untimely application may be excused in the event that it was caused by extraordinary circumstances. 8 U.S.C. § 1158(a)(2)(D). Federal courts, however, do not have "jurisdiction to review decisions of whether an alien complied with the one-year time limit, or whether extraordinary circumstances were present to justify untimely filing of the asylum application." Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007). Therefore, we are divested of jurisdiction to consider this issue and accept the BIA's determination that the Acunas are ineligible for asylum. Accordingly, we dismiss the Acunas's petition as to the asylum claim.

Second, the Acunas argue that they are entitled to withholding of removal. Because an application for withholding of removal is not subject to the one-year time limitation placed on asylum applicants, we may review the Acunas's eligibility for withholding of removal. See Id.

An alien is entitled to withholding of removal to a country if his "life or freedom would be threatened in that country because of the alien's race, religion,

8

nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). If an alien can show that he suffered past persecution, he is entitled to a presumption that future persecution would occur if returned to that country. Ruiz, 479 F.3d at 766. Otherwise, he must prove that it is "more likely than not" that he would suffer future persecution. Id. If an alien's testimony is credible, it may be sufficient, without corroboration, to satisfy his burden of proof in establishing his eligibility for relief from removal. 8 C.F.R. §§ 208.13(a), 208.16(b); Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Id. (internal citation omitted). Where, however, the alien provides other evidence of persecution, that evidence must be considered and the court may not rely solely on the adverse credibility finding. Id.

We conclude that the BIA's and IJ's adverse credibility decisions and findings that the Acunas failed to meet the burden of proof necessary to establish eligibility for withholding of removal were supported by substantial evidence. First, significant inconsistencies existed between Luis's testimony, his asylum application, and his interview with an asylum officer. Furthermore, the Acunas's claim for relief relies significantly on merely eight threatening telephone calls. The evidence regarding two incidents involving the family's uncles, although

egregious, offer little additional support for the claims here. The first incident appears to be one in which Luis was in the wrong place at the wrong time, an episode in which a "war tax" was being collected from his uncle's farm. In the second incident, Luis admitted that the attack on his uncle was likely because of money. As we have discussed previously, "persecution" is an "extreme concept," requiring "more than a few isolated incidents of verbal harassment or intimidation." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) (quotation marks and citations omitted). After reviewing the record as a whole, therefore, we conclude that even if Luis's testimony was found to be credible, the evidence provided is insufficient to demonstrate past persecution due to race, religion, nationality, membership in a particular social group, or political opinion or prove it is more likely than not that the Acunas will suffer future persecution.

Finally, the Acunas argue that they are entitled to withholding of removal under the CAT. As part of this argument, the Acunas argue that the Colombian government is aware of the torturous activities of the ELN and does nothing to prevent it. To show entitlement to relief under the CAT, an applicant must establish that it is "more likely than not that he would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Here, even if a showing that the Colombian government was aware of the ELN's activities and failed to intervene was sufficient to establish a claim under the CAT and the Acunas were

able to demonstrate such, there is no evidence of past persecution and insufficient evidence to demonstrate that the Acunas themselves would face persecution if returned. In light of these findings, the Acunas cannot show that it is more likely that they will face torture if returned to Colombia.

For the foregoing reasons, the petition for review is **DENIED IN PART** and **DISMISSED IN PART**.