[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 20, 2010
JOHN LEY
CLERK

No. 09-11812

D. C. Docket No. A095-895-003

RUBEN DARIO VILLARREAL,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of a Decision of the
Board of Immigration Appeals

(April 20, 2010)

Before DUBINA, Chief Judge, KRAVITCH, Circuit Judge and ALBRITTON,[*] District Judge.

---

[*]Honorable William H. Albritton, III, United States District Judge for the Middle District of Alabama, sitting by designation.

PER CURIAM:

Petitioner, Ruben Dario Villarreal, seeks review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), and withholding of removal under the United Nations Convention Against Torture ("CAT"). After reviewing the record, we deny the petition in part and dismiss it in part.

## I.  BACKGROUND

Villarreal is a native and citizen of Colombia who was admitted to the United States on May 20, 2002, as a non-immigrant visitor with an authorized period of admission not to exceed November 19, 2002. In August 2002, Villarreal submitted an application for asylum, which the Department of Homeland Security ("DHS") construed as an application for withholding of removal and protection under CAT. In January 2003, Villarreal received a Notice to Appear ("NTA"), charging him with being subject to removal pursuant to INA § 237(a)(1)(B). Villarreal appeared before an IJ, admitted the factual allegations lodged against him and conceded removability. After a hearing on his claims, the IJ denied his petitions. The BIA dismissed Villarreal's appeal, and he timely petitioned this court for review.

In his application, Villarreal states that he was a dentist in Colombia and fears returning to his native country to an imminent risk of being killed by members of the terrorist Guerrilla organization known as the Rebel Armed Forces from Colombia" ("FARC"). He states that he was involved in the Colombian Liberal Party, and he became involved in political affairs through his work with the health brigades, a group of doctors and dentists who provided free medical and dental care in remote areas of Colombia. He claims that in August 2002, a man from the FARC telephoned him and told him to stop his meetings or the FARC would kill him. He also received more threatening calls from the FARC that were relayed to him by his secretary. He continued to work in politics and assisted with the campaign to elect Alvaro Uribe Velez as the president of Colombia. In December 2001, Villarreal received a threatening letter from the FARC that he took to the police. The next month, his secretary received several more threatening calls from the FARC.

Villarreal also claims that in March 2002, two armed men grabbed him as he was leaving the hospital, forced him into a car, and blindfolded him. They took him to a house to attend to a man who had a facial wound. The men identified themselves as FARC rebels and told him to take care of the injured rebel. When Villarreal informed them that he was a dentist, not a doctor, one of the men

3

punched him in the face. Villarreal operated on the man, and a FARC commandant ordered Villarreal to stop asking for votes for Uribe Velez and not to report the occurrence. The following morning, the men returned him to an area near the hospital. Villarreal states that the event traumatized him, and he was unable to return to work for several days. When he did return, the FARC called his office and told his secretary to tell Villarreal that he could not hide because they knew where he was.

After Villarreal returned to work following the kidnaping incident, he went to his mother's house where, via telephone, he cancelled his contracts and closed his office. While at his mother's house, Villarreal received another threatening call from the FARC. Later, his secretary told him that she had been forced into a car, beaten, and threatened with death if she did not tell the perpetrators where Villarreal was located. The FARC also sent a letter to Villarreal's secretary stating that they considered Villarreal a military target, and there was an order out to find and execute him. Fearing for his safety and the safety of his family, Villarreal traveled to the United States.

At the hearing before the IJ, Villarreal admitted the charges contained in the NTA and conceded removability. At the hearing, he admitted into evidence his asylum application, the NTA, and some exhibits, as well as the United States

4

Department of State's Country Report for Colombia. His testimony was consistent with his statements in his asylum application, with the addition that after the kidnaping incident, he anonymously made two speeches on a local radio station and described everything that had happened to him in order to warn the people of the FARC.

Following the hearing, the IJ issued its oral decision denying Villarreal's applications and ordering him removed to Colombia. The IJ held that Villarreal did not provide a credible claim or sufficient corroborative evidence of his allegations. Specifically, the IJ noted that Villarreal's corroborative evidence was only general in nature, he failed to submit corroborating statements from two doctors in Colombia who were familiar with the situation, the secretary's statement omitted many material facts to which Villarreal testified, and there were aspects of his claim that were implausible. The IJ alternatively noted that even if Villarreal's claim was credible, he did not establish his eligibility for asylum or withholding of removal. Noting the fact that Villarreal was never harmed while in Colombia and the fact that he received only various alleged threats, the IJ determined that these incidents did not constitute persecution under the INA. Furthermore, the IJ found that Villarreal failed to establish that the alleged acts of persecution were on account of a statutorily protected ground. There was no

5

indication that he was targeted because of his political opinion, and the evidence showed that he was kidnaped in order to provide medical services to a wounded guerilla. Thus, the IJ determined that Villarreal failed to establish past persecution or a well-founded fear of persecution, especially because his family had not been threatened since his departure. Because the IJ found that Villarreal failed to establish eligibility for asylum, he also found that Villarreal necessarily failed to establish his eligibility for withholding of removal.

On appeal, the BIA did not explicitly address the IJ's adverse credibility determination, but rather held that Villarreal failed to establish his eligibility for asylum and withholding of removal. Regarding his application for asylum, the BIA held that Villarreal failed to establish that any of the alleged acts of persecution were on account of a statutorily protected ground or rose to the requisite level of severity to constitute persecution under the INA. Thus, the BIA determined that Villarreal failed to establish his eligibility for asylum or withholding of removal and consequently dismissed the appeal.

## II. STANDARD OF REVIEW

On petition for review, we review only the decision of the BIA, unless the BIA adopts the IJ's reasoning, in which case we review both decisions. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "We review the [BIA's] factual

determinations under the substantial evidence test." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). Under this test, we review "the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). Accordingly, "[t]o conclude the BIA's decision should be reversed, we 'must find that the record not only supports the conclusion, but compels it.'" *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007) (quoting *Fahim v. United States Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002)).

## III. DISCUSSION

A removable alien who claims that he will be persecuted if returned to his native country may seek relief from removal in the form of asylum. INA, 8 U.S.C. § 1158(a). An applicant for asylum must first establish that he is a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A). A refugee is a person who is unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* The asylum applicant bears the burden of proof to establish statutory eligibility for asylum. *Al Najjar*, 257 F.3d at 1284; 8 C.F.R. § 1208.13(a). "To establish asylum [eligibility] based on past

persecution, the applicant must prove (1) that [he] was persecuted, and (2) that the persecution was on account of a protected ground." *Silva v. United States Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006). "To establish eligibility for asylum based on a well-founded fear of future persecution, the applicant must prove (1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *Id.* (internal citations and quotation marks omitted). A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. *Sepulveda v. United States Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005). Although the term "persecution" is not defined in the INA, this court has found that persecution is an "extreme concept" which requires "more than a few isolated incidents of verbal harassment or intimidation." *Id.*

To qualify for withholding of removal under the INA, an alien must show that if returned to his country, his life or freedom would be threatened based on race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). Failure to establish the well-founded fear needed for asylum eligibility necessarily forecloses the ability of the alien to establish eligibility for withholding of removal because the asylum standard is more lenient. *Al Najjar*, 257 F.3d at 1292–93. Additionally, to qualify for CAT relief, the alien

8

must establish that it is more likely than not that he would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). The regulations define torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

There is substantial evidence in the record to support the BIA's conclusion that Villarreal failed to show that he was a victim of past persecution or had an objectively well-founded fear of future persecution on account of his political opinion. The evidence presented at his removal hearing and in his asylum application does not support Villarreal's contention that he was persecuted by the FARC based on his liberal political opinion. By Villarreal's own account of the kidnaping, the FARC abducted him for his medical expertise. There was no indication that the FARC targeted him on this occasion for any reason other than his medical skills. *See Sepulveda*, 401 F.3d at 1231 (applicant must establish a causal connection between the political opinion and the feared persecution). Additionally, the other incidents to which Villarreal refers, the threatening phone calls and letters, do not rise to the level of persecution. *See Silva*, 448 F.3d at 1238–39; *Sepulveda*, 401 F.3d at 1231. Furthermore, the abduction and threats

were chronologically distinct events that do not compel the conclusion that he was persecuted or that he was persecuted on account of his political opinion.

We find substantial evidence in the record to support the BIA's determination that Villarreal was ineligible for asylum because he failed to demonstrate persecution on account of a protected ground, and the record does not compel a contrary conclusion. *Ruiz*, 479 F.3d at 765 (in order to reverse the BIA's decision, the court must find that the record compels a contrary conclusion). Furthermore, because Villarreal is unable to meet the standard of proof for asylum, he is also unable to meet the higher burden required for withholding of removal. Thus, the record neither compels, nor supports, the conclusion that the BIA's decision regarding asylum and withholding of removal should be reversed. As for Villarreal's CAT claim, he failed to exhaust this claim with the BIA, and consequently, we lack jurisdiction to entertain this claim on appeal. *See Amaya-Artunduaga v. United States Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006); 8 U.S.C. § 1252(d)(1).

Accordingly, we deny Villarreal's petition in part and dismiss it in part.

**PETITION DENIED, in part and DISMISSED, in part.**

10

Kravitch, J., dissenting in part,

Our case law places on us a high standard that the record must *compel* the conclusion that the petitioner suffered persecution, *Ruiz v. U.S. Att'y Gen.*, 479 F.3d 762, 765 (11th Cir. 2007). Because I believe the record in this case compels that conclusion, I respectfully dissent from the majority's opinion.[1]

In 2000 and 2001, Villarreal received phone calls and letters warning him to cease his political activities. In March 2002, he was kidnapped to provide medical services for one of the FARC guerilla and, while in FARC custody, he was told to stop his political work. Although it is clear that the FARC kidnapped Villarreal for his medical training, Villarreal's credible testimony established that the FARC was also motivated by Villarreal's political activities.[2] *See Sanchez Jiminez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007) (holding that the protected ground does not need to be the *only* motivating factor). Moreover, when Villarreal went into hiding after his release, the FARC kidnapped and interrogated his

---

[1] I concur with the majority's conclusion that we lack jurisdiction to consider the unexhausted CAT claim.

[2] The majority concludes without discussion that the IJ made an adverse credibility determination. After reviewing the record, I disagree. The IJ's statement was insufficient to meet our standard under *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) (holding that the IJ must make clean adverse credibility determinations). In the absence of an explicit adverse credibility determination, we must assume Villarreal's testimony is credible. *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257 (11th Cir. 2007).

11

secretary to learn his whereabouts. This incident is further evidence of persecution. *See De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008).

Although none of these incidents alone would compel the conclusion that Villarreal was persecuted, our case law requires that we consider the events cumulatively. *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007). Considering the threatening calls, the kidnapping, and the attack on Villarreal's secretary cumulatively, I am compelled to conclude Villarreal suffered past persecution on account of his political opinion. We must therefore presume he had a well-founded fear of future persecution. On remand, the government could rebut this presumption with evidence that Villarreal could relocate. Accordingly, I would vacate and remand with instructions for the BIA to address the issue of relocation.