[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14708
Non-Argument Calendar
_____

Agency No. A073-181-788

HUA WU WU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 1, 2017)

Before MARCUS, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Petitioner Hua Wu Wu is a native and citizen of China who claims that if he is removed to China, he will be persecuted or tortured because of his religion (Christianity) and because he violated China's "one-child" family-planning policy by having three children in the United States. During removal proceedings, Wu applied for asylum, withholding of removal, relief under the United Nations Convention Against Torture ("CAT"), and cancellation of removal. An Immigration Judge ("IJ") denied relief on each claim and ordered Wu removed to China. The Board of Immigration Appeals ("BIA") affirmed the denial of relief. Wu petitions this Court for review of these decisions.

After careful review, we deny the petition in part, grant it in part, and dismiss it in part. We deny the petition as to Wu's claims of past religious persecution because the IJ's adverse credibility determination is supported by substantial evidence in the record. However, we grant the petition with regard to Wu's claim of future religious persecution because the BIA failed to consider whether Wu's other evidence was sufficient to meet his burden of proof notwithstanding his lack of credibility. We dismiss the petition as to his remaining claims. We are unable to review his family-planning claim because he failed to raise this issue before the BIA, and we lack jurisdiction to review the BIA's discretionary decisions in denying cancellation of removal.

**I.**

2

Wu, a native and citizen of China, entered the United States without inspection at an unknown place and time. He filed a request for asylum based on his religion (Christianity) in July 1993. He was interviewed by an asylum officer in 2007. Thereafter, the Department of Homeland Security initiated removal proceedings, charging Wu with removability for being present in the United States without authorization. Wu admitted the allegations against him and conceded removability. He renewed his application for asylum and also applied for withholding of removal, relief under CAT, and cancellation of removal. Wu claimed that he would be persecuted in China based both on his religion and on his violation of China's family-planning policies.

In support of his claims, Wu submitted evidence. This evidence included (a) country reports; (b) a letter dated November 20, 2008, from Changle City Meihua Town Christian Church in China, which stated that Wu had "accepted Jesus Christ as his Savior in December 1989, and he participated in gathering activities of this church"; (c) a letter dated February 18, 2007, from the pastor of the New Hope Baptist Church in the United States, who wrote that he had known Wu and his family for almost five years and that they were active in the church; (d) a letter dated January 11, 2009, from the pastor of the Church of Grace to Fujianese in New York, who wrote that Wu had attended Sunday service since November 16, 2008, and had "completed the required salvation course at [the]

3

church"; (e) images of Wu's religious activities in the United States; (f) a letter from Wu's mother, who wrote that Wu had accepted Jesus Christ as his savior in 1989 and that, in her remote town in China, there were conflicts between the government and the churches; and (g) a sworn affidavit from Wu's brother-in-law, who stated that he had observed Wu attend religious gatherings at the Church of Grace in New York and that Wu had told him about participating in underground church activities in China.

Wu appeared before an IJ for a merits hearing on his claims in June 2010. After hearing testimony from Wu and his brother-in-law, the IJ denied all of Wu's claims. Notably, the IJ made an adverse credibility determination, finding Wu's testimony inconsistent or difficult to pin down on certain details. Wu appealed the IJ's decision to the BIA, which remanded the matter back to the IJ for further proceedings and a fresh credibility determination.

On remand, the government submitted a set of notes purportedly made by the asylum officer at Wu's interview in 2007. The government also submitted more recent country reports. The IJ conducted a second merits hearing in January 2012. After hearing additional testimony from Wu, the IJ again made an adverse credibility determination and denied his applications for asylum, withholding of removal, CAT relief, and cancellation of removal. In light of the adverse credibility determination, the IJ concluded that Wu had failed to establish past

persecution.  As to future persecution, the IJ concluded that Wu's testimony did not credibly establish that he openly practiced his religion, but that, in any case, the evidence did not show that he would be subject to persecution based on his religion on his return.  With regard to Wu's application for cancellation of removal, the IJ found that Wu had not demonstrated either good moral character or exceptional and extremely unusual hardship to his United States citizen children.  The IJ also concluded that he would deny cancellation in Wu's case as a matter of discretion even if Wu had met the other requirements.

Wu again appealed to the BIA, which affirmed the denial of asylum, withholding of removal, CAT relief, and cancellation of removal.  The BIA affirmed the IJ's adverse credibility determination, finding "significant inconsistencies between the respondent's testimony at the last merits hearing and his prior testimony, his asylum application, and his interview with the asylum officer."  "Most significant" to the BIA was the fact that, "at the hearing in 2012, [Wu] testified that in 1992, he was taken from church services by police, separated from his parents, detained for 3 days, and beaten."  "However," the BIA explained, "this is the first time he mentioned this central event supporting his claim of religious persecution," despite three prior opportunities.  The BIA also found that Wu's prior statements concerning his religion were vague and did not indicate past

persecution and that there were inconsistencies in his testimony on how he came to the United States.

Concluding that the adverse credibility determination alone was sufficient to support the denial of Wu's religious-persecution claims, the BIA did not address the IJ's findings as to future persecution assuming Wu's credibility.  The BIA found that Wu's claim based on China's family-planning policies had been waived because he failed to raise the issue in his brief to the BIA.  As for cancellation of removal, the BIA agreed with the IJ that Wu had not established the requisite hardship to his children and with the IJ's decision to deny cancellation of removal as a matter of discretion.  Wu now brings this petition for review.

## II.

We review the BIA's decision as the final judgment, unless the BIA expressly adopts the IJ's decision.  *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).  Where the BIA agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement.  *Gonzalez v. U.S. Atty. Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).  "We do not consider issues that were not reached by the BIA."  *Id.*

We review factual determinations, which include credibility determinations, under the substantial-evidence test.  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254-55 (11th Cir. 2006).  We must affirm the agency's decision if it is supported

6

by reasonable, substantial, and probative evidence in light of the record as a whole. *Id.* We view "the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1255 (quotation marks omitted). For a finding of fact to be reversed, the record must "compel[]" reversal. *Id.*

We review our subject-matter jurisdiction *de novo*. *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003). We are obligated to inquire into our subject-matter jurisdiction whenever it may be lacking. *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1292 (11th Cir. 2008).

## III.

An applicant for asylum must meet the Immigration and Nationality Act's definition of a refugee. *See* 8 U.S.C. § 1158(b)(1). The definition of "refugee" includes

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). Thus, in order to meet the definition of a refugee, the applicant "must, with specific and credible evidence, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that

7

the statutorily listed factor will cause future persecution." *Ruiz*, 440 F.3d at 1257 (internal quotation marks omitted).

In order to support a claim for withholding of removal, a petitioner must show that it is more likely than not that he will be persecuted on account of a protected ground on his return to the country in question. 8 C.F.R. § 208.16(b)(2). The burden of proof for withholding of removal is more stringent than the standard for asylum relief, so the failure to establish the asylum standard likewise precludes granting withholding of removal. *See Ruiz*, 440 F.3d at 1257. To support a claim for CAT relief, a petitioner must show that it is more likely than not that he will be tortured if returned to his home country. *D-Muhumed v. U.S. Att'y Gen.,* 388 F.3d 814, 819 (11th Cir. 2004).

An applicant's testimony, if credible, may be sufficient to sustain his burden of proof even without corroborating evidence. *Ruiz*, 440 F.3d at 1255. Conversely, if the applicant relies solely on his own testimony, an adverse-credibility determination alone may be sufficient to support the denial of an application. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). "If, however, the applicant produces other evidence of persecution, whatever form it may take, the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on an adverse-credibility determination in those instances." *Id*. "An

8

adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." *Id.*

"If the IJ finds an asylum applicant not credible, the IJ must make an explicit adverse credibility finding and offer specific, cogent reasons for the finding." *Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1049 (11th Cir. 2009).  In challenging the IJ's credibility determination, the applicant must demonstrate that the decision was not supported by "specific, cogent reasons" or is not based on substantial evidence.  *Id.*  Testimony may be found to lack credibility if it is inconsistent internally or with the application or other evidence, or if there are significant omissions.  *Ruiz*, 440 F.3d at 1255.

Wu presents three main challenges to the denial of his claims of persecution: (1) the IJ and BIA failed to offer specific, cogent reasons to support the adverse credibility determination; (2) Wu could still establish a claim of future religious persecution, notwithstanding a lack of credibility, based on the other corroborating evidence he presented; and (3) the IJ and BIA erred in denying his claim based on China's family-planning policies.  We address each contention in turn.

## A.

Wu first argues that the IJ's adverse credibility finding is not supported by specific, cogent reasons.  He claims that both his 1993 asylum application and the asylum interview notes from 2007 were unreliable sources on which to base a

9

credibility determination.  In addition, Wu argues that the BIA and IJ relied on "minor issues" to discredit him.

We disagree.  The IJ and BIA gave specific, cogent reasons for finding Wu not credible, and those reasons are supported by substantial evidence in the record. The IJ and the BIA both highlighted a material inconsistency between Wu's testimony at the 2012 merits hearing and his other prior statements at the 2010 merits hearing, in his interview with the asylum officer in 2007, and on his asylum application.

As the BIA explained, Wu testified for the first time at the 2012 merits hearing that, before he came to the United States from China, he was taken from church services by police, separated from his parents, detained for 3 days, and beaten.  But Wu had failed to mention this significant event, central to his claim of religious persecution, at any point before the second merits hearing.  In fact, in the asylum interview, Wu indicated that he had been detained once for fishing but otherwise had had no problems.

Wu gave no explanation when the IJ asked for a reason for the omission, and he provided no corroboration of his detention.  This significant omission relates directly to Wu's claim of past religious persecution and provides substantial evidence to support an adverse credibility determination.  *See Forgue*, 401 F.3d at 1287 (finding substantial evidence for an adverse credibility determination where,

10

prior to the hearing, the asylum applicant had never mentioned instances of persecution based on his political activities); *see also Shkambi*, 584 F.3d at 1051–52 (finding substantial evidence for an adverse credibility determination where the applicant had failed to mention in an credible-fear interview "the most severe allegations of mistreatment found in his asylum application and hearing testimony").

Wu contends that both the asylum application and the interview notes from his asylum interview cannot be given much weight in evaluating his credibility because they are unreliable. But Wu acknowledged that he had failed to mention his alleged detention in the asylum interview, so the notes are unnecessary to establish that omission. And even disregarding the asylum application and interview notes, Wu failed to mention his alleged detention in his first merits hearing. Wu does not address why the IJ could not have reasonably relied on his prior hearing testimony to support the credibility determination.

Furthermore, additional aspects of Wu's testimony support the IJ's adverse credibility determination, even if they were "minor" issues that, standing alone, may not have been sufficient to ground that determination.[1] As the BIA noted,

---

[1] Although the REAL ID Act, applicable to asylum claims filed on or after May 11, 2005, provides that inconsistencies need not go to the heart of the claim, we have not resolved whether the same rule holds for pre-REAL ID Act applications, such as Wu's. *See Shkambi*, 584 F.3d at 1049. Nevertheless, we need not resolve that issue in this case because, as the BIA indicated, the "most significant" basis for the adverse credibility determination relates directly to Wu's claims of persecution.

11

Wu's testimony was inconsistent regarding how he arrived in the United States, and some of his responses regarding his religion were vague. Accordingly, we disagree that the IJ and BIA improperly relied on minor issues in evaluating Wu's credibility, and we conclude that substantial evidence supports the agency's specific, cogent reasons for making an adverse credibility determination.

Apart from challenging the adverse credibility determination, Wu does not contend that the IJ or BIA erred in finding that he failed to establish past persecution on account of his religion. Accordingly, we deny the petition for review as to his claims based on past persecution.

**B.**

Wu next argues that, even if his claim for past religious prosecution fails because the BIA discredited his testimony, he still could establish a claim of future persecution based on other evidence of his Christian beliefs and practices in the United States and of China's pattern and practice of persecuting Christian believers.

The BIA denied Wu's religious-mistreatment claims based solely on the IJ's adverse-credibility determination. But, as explained above, "if the applicant produces other evidence of persecution, whatever form it may take, the [agency] must consider that evidence, and it is not sufficient for the [agency] to rely solely on an adverse credibility determination in those instances." *Forgue*, 401 F.3d at

12

1287. Here, Wu produced other evidence beyond his own testimony, in the form of letters from his family members and from churches he attended, indicating that he was an openly practicing Christian in the United States. He also presented country-condition evidence regarding the harsh treatment of attendees of underground Christian churches in China. Because Wu produced corroborating evidence bearing upon his claim of religious persecution, the BIA erred by relying solely on the adverse credibility determination to affirm the denial of Wu's claims for asylum, withholding of removal, and CAT relief. *See id.*

As the BIA did not address whether Wu's additional evidence established his eligibility for relief from removal, notwithstanding the adverse credibility determination, we cannot do so in the first instance. *See Gonzalez*, 820 F.3d at 403 ("We do not consider issues that were not reached by the BIA."); *Gonzales v. Thomas*, 547 U.S. 183, 184-87 (2006) (holding that federal courts are not entitled to pass judgment on issues the agency did not address). Accordingly, we grant Wu's petition for review as to this issue, and we remand for the BIA to consider whether Wu's additional evidence regarding religious persecution established his eligibility for relief from removal, despite the adverse credibility determination.

## C.

Finally, Wu argues that the BIA and IJ erred by rejecting his claim of future persecution based on his violation of China's family-planning policy by fathering

three children in the United States.  Because Wu failed to challenge the IJ's denial of this claim in his appeal to the BIA, however, we lack jurisdiction to consider this issue on appeal.  *See Amaya-Artunguaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (holding that we lack jurisdiction to review claims that were not raised in an appeal before the BIA); *see also* 8 U.S.C. § 1252(d)(1). Accordingly, we dismiss the petition as to this issue.

## IV.

Wu also challenges the denial of his application for cancellation of removal. He asserts that he presented sufficient evidence to establish exceptional and extremely unusual hardship to his United States citizen children so as to be eligible for cancellation of removal.

Under 8 U.S.C. § 1229b(b)(1), the Attorney General has discretion to cancel the removal of a person who demonstrates (1) continuous physical presence in the United States of at least 10 years preceding the date of application; (2) good moral character during that period; (3) a lack of certain criminal convictions; and (4) exceptional and extremely unusual hardship to a qualifying relative.

Section 1252(a)(2)(B) however, prevents this Court from reviewing discretionary decisions regarding cancellation of removal under § 1229b.  *See* 8 U.S.C. § 1252(a)(2)(B).  Specifically, we cannot review the BIA's discretionary determination that a petitioner has not met the "exceptional and extremely unusual

14

hardship" standard for purposes of cancellation of removal. *Martinez v. U.S. Att'y. Gen.*, 446 F.3d 1219, 1222 (11th Cir. 2006); *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332–33 (11th Cir. 2003).

Although we retain jurisdiction to review "constitutional claims or questions of law raised upon a petition for review," *see* 8 U.S.C. § 1252(a)(2)(D), challenges to the BIA's hardship determination under § 1229b(b)(1) are not constitutional claims or questions of law subject to review under that section. *Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 549–50 (11th Cir. 2011); *Martinez*, 446 F.3d at 1222. Moreover, "a garden-variety abuse of discretion argument," such as a contention that the BIA failed to weigh the evidence presented properly, does not amount to a legal question under § 1252(a)(2)(D). *Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1196–97 (11th Cir. 2008).

Here, we lack jurisdiction to review the agency's discretionary determination that Wu failed to meet § 1229b(b)(1)(D)'s hardship requirement. We also lack jurisdiction to review the BIA's alternative determination that Wu's application was due to be denied as a matter of discretion even if he had met the eligibility requirements. Because Wu does not raise a constitutional claim or question of law relating to the denial of his application for cancellation of removal, we dismiss his petition for lack of jurisdiction as to this issue.

**PETITION DENIED IN PART; GRANTED IN PART; AND DISMISSED IN PART.**