[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 20, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-15875

_____

BIA No. A97 185-014

JAVIER MAURICIO
MARTINEZ RUIZ,

                                                      Petitioner,

versus

ALBERTO R. GONZALES,
Attorney General of the United States,

                                                      Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 20, 2007)**

Before PRYOR, FAY and REAVLEY,[*] Circuit Judges.

---

*Honorable Thomas M. Reavley, United States Circuit Judge for the Fifth Circuit, sitting by designation.

FAY, Circuit Judge:

Upon *sua sponte* reconsideration of this appeal, we vacate our prior opinion, published at 472 F.3d 1323 (11th Cir. 2006), and substitute the following opinion in its place.

Javier Mauricio Martinez Ruiz ("Ruiz"), a Colombian citizen, appeals the Board of Immigration Appeals' ("BIA") denial of his application for asylum as well as his request for withholding of removal. Because Ruiz filed his application for asylum 21 days after the one-year deadline, we hold that this Court does not have jurisdiction to review the denial of his asylum application pursuant to 8 U.S.C. § 1158(a)(3). We also hold that Ruiz's kidnaping, physical assaults, and threatening phone calls rise to the level of persecution. For the reasons set out below, we grant Ruiz's request for reconsideration of his petition for withholding of removal and remand for further proceedings consistent with this opinion.

## BACKGROUND

Ruiz is a citizen of Colombia. He testified before the Immigration Judge ("IJ") as follows. He joined the Colombian Liberal Party in 1994. Ruiz was involved in numerous activities for the party, such as delivering food, medicine, and working in voting drives.

In September of 2001, the Revolutionary Armed Forces of Colombia ("FARC") began to harass him. The first incident occurred when the FARC interrupted a meeting which he was attending with some local peasants. The FARC physically assaulted him and accused him of acting on behalf of "politicians from Bogota." They also took several of the young peasants with them, shooting one when he tried to escape. As they left, the FARC warned him that they would kill him if he continued to participate in politics. Ruiz filed a police report about the incident. A few days later, the FARC called him and demanded that he stop his political activities.

Ruiz testified that the next incident occurred when he was returning to Bogota from delivering food for the Liberal Party. As his group was returning, members of the FARC stopped the bus, ordered everyone off, and set it on fire. They also took some of the female passengers with them. They beat Ruiz with their weapons and told him it was his last chance to cease his political activities.

On December 1 and 2, 2001, the FARC telephoned Ruiz and again threatened his life. Taking these warnings more seriously, he went into hiding on a farm where his friend, Victor, was the caretaker. On January 5th, the FARC went to the farm, kidnaped Ruiz and Victor, killed several animals, and raped Victor's wife. The FARC marched Ruiz and Victor through the Colombian

jungles and beat Ruiz severely while they were marching. According to Ruiz's testimony, the FARC's plan was to trade him and Victor for imprisoned guerillas. The FARC believed they could do this because of Ruiz's place within the Liberal Party. Since he was active in politics, the FARC believed Ruiz's life would be of sufficient value to arrange such a trade. After 18 days of being held against his will, Ruiz managed to escape when the Colombian Army skirmished with the FARC on January 23, 2002. On February 3, 2002, 11 days later, he arrived in the United States. In February 2003, Victor was found dead in a common grave.

## COURSE OF PROCEEDINGS

Ruiz came to the United States on February 3, 2002, on a six-month visa. More than a year later, the federal government ("respondent") instituted preliminary deportation proceedings against him. On February 24, 2003, Ruiz filed an I-589 application requesting asylum. In the alternative, he also requested withholding of removal under 8 U.S.C. § 1231(b)(3). He presented multiple pieces of evidence in support of his testimony, such as a Colombian police statement from Victor's wife which recounted her rape and the kidnaping of Victor and Ruiz. Ruiz also submitted a medical report and a prescription he received to treat injuries received while held captive. He also submitted a police report concerning the September 12 beating he received. Furthermore, Ruiz filed

4

a letter from the Campaign Coordinator of the Liberal Party, stating that he was an active member in the party. Finally, he filed Victor's death certificate, which corroborated that Victor was shot and found in a common grave.

The IJ found that Ruiz's asylum application was time-barred by 8 C.F.R. § 208.4(a)(2) because it was not filed within the one year deadline. The IJ determined that even if the asylum application were not time-barred, it would still be denied based on a lack of credibility in Ruiz's testimony and because he had failed to establish that he was persecuted based on any of the five statutory grounds outlined in 8 U.S.C. § 1101(a)(42)(A). Those grounds are race, religion, nationality, membership in a particular social group, or political opinion. The IJ also concluded that even if these instances qualified as persecution, Ruiz could be relocated within Colombia under 8 C.F.R. § 208.16(b)(1)(i)(B), which would also serve to deny his asylum application. The IJ further concluded that because he did not show a "well-founded fear of persecution" as required for asylum, Ruiz had also failed to establish a "clear probability of persecution," the higher burden of proof required for withholding of removal.

Ruiz appealed to the BIA. The BIA, like the IJ, held that Ruiz's asylum application was time-barred. However, the BIA assumed Ruiz's credibility, and respondent concedes his credibility on this appeal. Even though it accepted his

testimony as credible, the BIA found that Ruiz did not demonstrate a clear probability of persecution if returned to Colombia, as required for withholding of removal. This appeal followed.

## STANDARD OF REVIEW

There are two issues on appeal:

I. Whether this Court has subject-matter jurisdiction to review the BIA's finding that Ruiz's asylum application was time-barred.

II. Whether the BIA erred when it denied Ruiz's request for withholding of removal.

We review subject-matter jurisdiction *de novo. See Brooks v. Ashcroft*, 283 F.3d 1268, 1272 (11th Cir. 2002); *Jairath v. Dyer*, 154 F.3d 1280, 1281-82 (11th Cir. 1998).

When the BIA issues a decision, we review the BIA's decision, except to the extent that the BIA has expressly adopted the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (*citing Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir. 1998)). In that instance, we review the IJ's decision as well. *Id. See also Predo-Gonzalez v. INS*, 75 F.3d 631, 632 (11th Cir. 1996).

This Court "must affirm the BIA's decision 'if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Al*

*Najjar*, 257 F.3d at 1284 (*citing Lorisme v. INS*, 129 F.3d 1441, 1444-45 (11th Cir. 1997)). To conclude the BIA's decision should be reversed, we "must find that the record not only supports the conclusion, but compels it." *Fahim v. U.S. Attorney Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (*quoting INS v. Elias-Zacarias*, 502 U.S. 478, 480 n.1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

## ANALYSIS

### I. Jurisdiction Over the Denial of Asylum

Pursuant to 8 U.S.C. § 1158(a)(2)(B), an application for asylum must be filed within one year of entering the United States. However, 8 U.S.C. § 1158(a)(2)(D) allows applications to be untimely in the event of extraordinary circumstances relating to delay in filing the asylum application. *See also* 8 C.F.R. § 208.4(a)(5) (identifying events that qualify as extraordinary circumstances). 8 U.S.C. § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." This Court has decided that this section divests us of jurisdiction to review decisions of whether an alien complied with the one-year time limit, or whether extraordinary circumstances were present to justify untimely filing of the asylum application. *Mendoza v. U.S. Attorney Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (*citing Fahim v. U.S. Attorney Gen.*, 278 F.3d 1216, 1217-18 (11th Cir. 2002)). Thus,

regardless of whether Ruiz's application was timely or whether extraordinary circumstances existed, it is not within this Court's jurisdiction to review a denial of asylum on those grounds.

## II. Withholding of Removal

Ruiz also appeals the IJ and BIA's denial of withholding of removal. 8 U.S.C. § 1231(b)(3)(A) provides that an alien is entitled to withholding of removal if removal would threaten his life or freedom on account of his race, religion, nationality, membership in a particular social group, or political opinion.

Respondent does not dispute that the record compels a finding that Ruiz was harassed by the FARC on account of his political opinion, one of the five protected grounds as per 8 U.S.C § 1231(b)(3)(A). His participation in Liberal Party activities precedes every FARC encounter, and the phone calls make clear that Ruiz drew the FARC's ire because of his political participation. Furthermore, the FARC telephoned Ruiz about a month before his kidnaping and threatened him once again, because he had not stopped his political activities. After seeking sanctuary with his friend, Victor, the FARC kidnaped him and Victor and attempted to trade them for imprisoned guerillas. The FARC would not have thought the trade was possible if it weren't for Ruiz's political position. Thus, the

FARC was persecuting Ruiz for his political opinion, one of the five protected grounds under 8 U.S.C. § 1231(b)(3)(A).

An alien seeking withholding of removal must show that it is "more likely than not" he will be subject to persecution based upon one of the five protected categories if returned to his country.[1] *INS v. Stevic*, 467 U.S. 407, 429-30, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321, 337 (1984). A showing that an alien has suffered past persecution in the proposed country of removal creates a rebuttable presumption that the alien's life or freedom would again be threatened upon removal to the proposed country. *Antipova v. U.S. Attorney Gen.*, 392 F.3d 1259, 1264 (11th Cir. 2004) (*citing* 8 C.F.R. § 208.16(b)(1)(i)). This Court has held that "persecution" is an "extreme concept" requiring "more than a few isolated incidents of verbal harassment or intimidation... [m]ere harassment is not persecution." *Sepulveda v. U.S. Attorney Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (*citing Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000) (internal quotes omitted).

Respondent argues that the record does not compel the conclusion that Ruiz suffered past persecution when it indicates that the FARC beat him on two

1. This is a more stringent standard than the "well-founded fear of persecution" standard used with regard to applications for asylum. *See Mazariegos v. Office of the U.S. Attorney General*, 241 F.3d 1320, 1324, n.2 (11th Cir. 2001).

occasions, telephoned threats to him, and held him against his will for 18 days. We disagree.

We hold that the BIA erred when it found that the cumulative effect of the beatings, the threatening phone calls, and the kidnaping did not amount to persecution. The record compels the conclusion that these events cumulatively amount to past persecution, and that this persecution was on account of his political opinion. The record compels such a conclusion because the BIA and the respondent accepted Ruiz's testimony as credible, as well as the corroborative evidence he filed, such as records documenting the medical treatment he received for injuries suffered during the kidnaping. Therefore, Ruiz has a rebuttable presumption that his life or freedom would be threatened upon removal to Colombia.[2]

An alien that has experienced past persecution may still be removable if the alien could avoid a future threat to his life or freedom by relocating to another part of the proposed country of removal, as long as it would be reasonable to expect him to do so. *Mendoza v. U.S. Attorney Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (*citing* 8 C.F.R. § 208.16(b)(1)(i)(B)).

---

2. Counsel for respondent concedes that if this kidnaping qualifies as persecution, Ruiz is entitled to relief. We have no difficulty in concluding that this kidnaping, coupled with the beatings before and during the kidnaping, and the threatening phone calls, cumulatively amount to persecution. We appreciate the candor of counsel.

The only information in the record indicates that relocation within Colombia was not a possibility. The U.S. Citizenship and Immigration Services report on the possibility of relocation within Colombia that appears within the record states that: "the FARC has a presence in virtually all of the nation's 32 departments and urban centers and has a country-wide capability to harm..." Based on the FARC's far-reaching presence in Colombia, the report concludes that relocating within Colombia would not be sufficient to escape FARC persecution. Based on this record, we are compelled to find that the INS failed to establish by a preponderance of the evidence that Ruiz could reasonably relocate within Colombia. *See Arboleda v. U.S. Att'y. Gen.*, 434 F.3d 1220 (11th Cir. 2006).

## CONCLUSION

We hold that this Court does not have jurisdiction to review the BIA's denial of Ruiz's asylum application as untimely, but we grant in part Ruiz's petition for reconsideration of his claim for withholding of removal. Therefore, we vacate the BIA's order and remand for proceedings not inconsistent with this opinion.

**PETITION DENIED IN PART AND GRANTED IN PART.**