[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12120
_____

Agency No. A206-737-421, A206-737-422, & A206-737-423

MIRZA DINORA RIVERA-GERONIMO,
ANYELO JOSIAS RIVERA-GERONIMO,
SANTIAGO MAURICIO GONZALEZ-RIVERA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 28, 2019)

Before MARTIN, ROSENBAUM, Circuit Judges, and MARTINEZ,[*] District
Judge.

_____

[*] Honorable Jose E. Martinez, United States District Judge for the Southern District of
Florida, sitting by designation.

MARTIN, Circuit Judge:

Mirza Dinora Rivera-Geronimo[1] petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of her application for asylum and humanitarian asylum. After careful consideration and with the benefit of oral argument, we deny the petition.

## I.

Ms. Rivera-Geronimo is a native and citizen of Guatemala. She entered the United States through Hidalgo, Texas, on May 11, 2014, without being admitted or paroled by an immigration officer. On May 12, 2014, the Department of Homeland Security ("DHS") issued her a notice to appear, which charged her with being removable under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), for having unlawfully entered the United States.

Ms. Rivera-Geronimo filed an application for asylum.[2] In it, she said she was "a victim of domestic abuse by [her] domestic partner, Romulo David

---

[1] Ms. Rivera-Geronimo's two children, Anyelo Josias Rivera-Geronimo and Santiago Mauricio Gonzalez-Rivera, were included in her application as derivative beneficiaries. She petitions for review of the BIA's resolution of the claims concerning them. See 8 U.S.C. § 1158(b)(3)(A). Although our opinion refers to Ms. Rivera-Geronimo, our holding applies equally to her children.

[2] In her application, Ms. Rivera-Geronimo also requested withholding of removal and Convention Against Torture protection. Ms. Rivera-Geronimo does not challenge the denial of her application on these grounds. As a result, she has abandoned those issues on appeal. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

Gonzalez de la Cruz." Ms. Rivera-Geronimo said when she was 15 years old, she met Mr. Gonzalez de la Cruz, who was 20 years her senior. After knowing each other for a month, Mr. Gonzalez de la Cruz "took [Ms. Rivera-Geronimo] out of [her] home." Ms. Rivera-Geronimo's father "did nothing to prevent it." She and Mr. Gonzalez de la Cruz never married.

Mr. Gonzalez de la Cruz became abusive toward Ms. Rivera-Geronimo. "He would lock [her] in the house and would not let [her] out"; "insult [her]"; "beat [her] up"; and "force [her] to have sex[] [with him] when [she] did not want to." On one occasion after drinking and taking drugs, Mr. Gonzalez de la Cruz screamed at Ms. Rivera-Geronimo and beat her with a chain, "almost demolish[ing]" her. On another occasion when Mr. Gonzalez de la Cruz became violent, Ms. Rivera-Geronimo called the police "looking for help but nobody arrived." She "tried to file a denunciation but [the police] laughed at [her] and . . . simply told [her] that [domestic abuse] was not a crime for them." In her application, Ms. Rivera-Geronimo explained the Guatemalan police "would not protect" her against Mr. Gonzalez de la Cruz because the police do not view "domestic violence . . . [as] a crime." Instead, "in Guatemala, violence against women by a spouse or partner is considered a private matter between a couple."

At a hearing before the IJ, Ms. Rivera-Geronimo testified she lived with Mr. Gonzalez de la Cruz for six years, beginning when she was 15 years old. She said

3

he forbade her from working, and he regularly beat and threatened her with knives. She also testified she reported Mr. Gonzalez de la Cruz to the police but they "did not pay any attention to [her]." She informed the IJ she did not leave Mr. Gonzalez de la Cruz sooner because he threatened that if she left, he would look for her, kill her, and take their children.

The IJ asked Ms. Rivera-Geronimo to define her "particular social group." Ms. Rivera-Geronimo's counsel responded her particular social group was "women [in] domestic relationships." Counsel explained "the patterns of discrimination and violence against women are . . . deeply rooted in [Guatemalan] society" and "because violence against women is so pervasive, and [is] culturally rooted in society, [Ms. Rivera-Geronimo] . . . argue[s] that women in domestic relationships are . . . no different than married women for purposes of particular social group."

The IJ then issued an oral decision denying Ms. Rivera-Geronimo's asylum claim. The IJ first discussed Matter of A-R-C-G-, 26 I. & N. Dec. 388 (BIA 2014), in which the BIA found that "married women in Guatemala who are unable to leave their relationship" constituted a cognizable particular social group under the INA. See id. at 392–93. The IJ highlighted that Matter of A-R-C-G- required a "marital relationship," and Ms. Rivera-Geronimo's particular social group

4

consisted of unmarried women.  As a result, the IJ concluded Ms. Rivera-Geronimo's particular social group was not cognizable under the INA.

The BIA reversed the IJ's decision.  According to the BIA, Matter of A-R-C-G- did not "necessarily require that a domestic relationship involve a legal marriage in order for an alien to establish that she is a member of a cognizable particular social group where, for example, the relationship is of long duration." The BIA remanded the case to provide Ms. Rivera-Geronimo with "a renewed opportunity to clearly and explicitly define the proposed particular social group upon which she seeks relief."[3]

At the hearing on remand, the IJ asked Ms. Rivera-Geronimo to explain her particular social group.  Ms. Rivera-Geronimo's counsel responded that her particular social group was "essentially the same group" as before and restated it as "Guatemalan women in domestic relationships."  After hearing additional argument, the IJ issued a second oral decision denying Ms. Rivera-Geronimo's request for asylum.  The IJ concluded Ms. Rivera-Geronimo's particular social group was not cognizable because it lacked particularity and social distinction. The IJ explained:

---

[3] On remand, Ms. Rivera-Geronimo amended her application for asylum.  She added an additional claim for asylum based on the domestic abuse she faced by her second domestic partner, a Guatemalan man who she met in the United States.  On appeal, Ms. Rivera-Geronimo raises arguments about the denial of this claim.  But none of her arguments address the reasons the BIA affirmed the denial.  As a result, she has abandoned this issue on appeal.  See Sepulveda, 401 F.3d at 1228 n.2.

5

Guatemalan women in domestic relationships is a huge number of women, extremely diverse, and numerous and inchoate, and lacks the requisite particularity to constitute a particular social group, nor is there any showing that Guatemalan society views them with the requisite social distinction.

The IJ also denied Ms. Rivera-Geronimo's claim for humanitarian asylum because Ms. Rivera-Geronimo failed to present sufficient evidence to show that the Guatemalan government was unwilling or unable to protect her.

The BIA affirmed the IJ's decision. The BIA found that "'Guatemalan women in domestic relationships' is not [a] legally viable [particular social group] because it lacks the required particularity and social distinction" and the particular social group in Matter of A-R-C-G- was more narrowly defined than "Guatemalan women in domestic relationships." As a result, the BIA concluded Ms. Rivera-Geronimo was ineligible for asylum.

The BIA also affirmed the IJ's humanitarian asylum conclusion but for different reasons than those relied on by the IJ. The BIA stated that "[b]ecause [Ms. Rivera-Geronimo] did not establish that her past persecution was on account of a protected ground—in this case, membership in a cognizable particular social group—she cannot qualify for humanitarian asylum." The BIA therefore dismissed Ms. Rivera-Geronimo's appeal. Ms. Rivera-Geronimo filed a petition for review in this Court, which we now consider.

**II.**

This Court reviews the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision. Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016) (per curiam). "Where the BIA agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement." Id. "In a petition for review of a BIA decision, we review conclusions of law de novo," including the question of "[w]hether an asserted group qualifies as a 'particular social group' under the INA." Id.

Although we review de novo the BIA's determination of a particular social group, our review "is informed by the principle of deference articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984)." Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1195 (11th Cir. 2006) (quotation marks omitted). This is because the INA does not define what constitutes a particular social group. See INS v. Aguirre–Aguirre, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445 (1999) ("[T]he BIA should be accorded Chevron deference [when] it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." (quotation marks omitted)). As a result, this Court applies the BIA's interpretation of what constitutes a particular social group unless the interpretation is unreasonable, arbitrary, capricious, or clearly contrary to law. Castillo-Arias, 446 F.3d at 1196.

## III.

Ms. Rivera-Geronimo raises three issues on appeal—all of which concern the BIA's interpretation of her particular social group.[4]   First, she argues the BIA erred in concluding she was not eligible for asylum because "Guatemalan women in domestic relationships" is a cognizable particular social group under the INA. Second, she argues she does not need to be a member of a cognizable particular social group to qualify for humanitarian asylum.  In the alternative, she argues because she is a member of a cognizable particular social group, the BIA erred in determining she was not eligible for humanitarian asylum.  We address each of Ms. Rivera-Geronimo's arguments in turn.

## A.

Ms. Rivera-Geronimo contends the BIA erred in rejecting her proposed particular social group—"Guatemalan women in domestic relationships"—as lacking particularity and social distinction.  She says the group she proposed is particular and socially distinct, and it is "not defined by the fact that the applicant

---

[4] In her initial brief, Ms. Rivera-Geronimo also argues that because the IJ and the BIA gave different reasons for denying her humanitarian asylum claim, this Court reviews both the decision of the IJ and the decision of the BIA.  However, this assertion is erroneous.  This Court reviews only the BIA's decision as the final judgment, unless the BIA expressly adopts the IJ's decision. Ruiz v. Gonzalez, 479 F.3d 762, 765 (11th Cir. 2007).  The BIA expressly adopted the IJ's decision for denying Ms. Rivera-Geronimo's asylum claim.  As a result, we review both the BIA and the IJ's decision on that claim. See id.  However, the BIA did not adopt the IJ's reasoning for denying Ms. Rivera-Geronimo's humanitarian asylum claim.  We therefore review only the BIA's reasoning for denying it. See id.

is or was subject to domestic violence." She explains her proposed particular social group's "defining characteristics" are "being 'women' and 'being or having been' in 'a domestic relationship.'"

Under the INA, an undocumented immigrant who arrives or is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1); Castillo-Arias, 446 F.3d at 1195. The BIA, through the Attorney General, has discretion to grant asylum if the immigrant meets the INA's definition of a "refugee." 8 U.S.C. § 1158(b)(1). The INA defines a "refugee" as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). Under this definition, an applicant may establish she is a "refugee" if she either: (1) suffered past persecution on account of race, religion, nationality, or membership in a particular social group,  or (2) has a "well-founded fear" that her race, religion, nationality, or membership in a particular social group will cause future persecution. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006) (per curiam). The burden is on the applicant to show that she qualifies as a "refugee." Id.

The BIA requires an applicant seeking asylum based on membership in a particular social group to show that the group is: "(1) composed of members who

share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." Matter of M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014). This Court generally defers to the BIA's interpretation of "particular social group." See Gonzalez, 820 F.3d at 404 ("We have . . . held that the BIA's interpretation of the phrase 'particular social group' . . . is entitled to Chevron deference because the INA does not define the phrase and it is ambiguous."). An applicant's particular social group must meet all three criteria. See Matter of M-E-V-G-, 26 I. & N. Dec. at 237. A particular social group must not be defined so broadly that it becomes a "catch-all for all groups who might claim persecution." Castillo-Arias, 446 F.3d at 1197. "The risk of persecution alone does not create a particular social group." Id. at 1198.

In support of her argument that "Guatemalan women in domestic relationships" is a cognizable particular social group, Ms. Rivera-Geronimo cites Matter of A-R-C-G-. There, the BIA found that "married women in Guatemala who are unable to leave their relationship" was a legally cognizable particular social group. Matter of A-R-C-G-, 26 I. & N. Dec. at 388–90. In making this determination, the BIA focused on Guatemalan societal expectations about gender and subordination and the lack of police interference to help women seeking protection from their abusive spouses. See id. at 393. According to the BIA, these societal norms, coupled with the group's "defining characteristics" of "married,"

10

"women," and "unable to leave the relationship," gave the particular social group "discrete and definable boundaries." Id.

But Ms. Rivera-Geronimo did not propose a group akin to the particular social group of "married women in Guatemala who are unable to leave their relationship."[5]  Instead, she proposed the group of "Guatemalan women in domestic relationships," which is not a cognizable particular social group. "Guatemalan women in domestic relationships" knows no discrete boundaries and is not sufficiently particular.  See Gonzalez, 820 F.3d at 404 ("[T]he proposed group . . . must not be amorphous, overbroad, diffuse, or subjective." (quotation marks omitted and alteration adopted)).  The group consists of women who are in healthy, voluntary, and loving relationships as well as those who are in abusive ones.  It offers no benchmark or distinguishable characteristic based on Guatemalan societal expectations and is thus overly broad and amorphous.  See id.; see also Matter of W-G-R-, 26 I. & N. Dec. 208, 221 (BIA 2014) (rejecting the particular social group of former members of the Mara 18 gang in El Salvador who renounced their gang membership because it could include "persons of any age,

---

[5] We recognize Matter of A-R-C-G- has been overruled by Matter of A-B-, 27 I. & N. Dec. 316 (AG 2018).  But the BIA's decision in this case came before Matter of A-B- when "married women in Guatemala who are unable to leave their relationship" was still a cognizable particular social group.

11

sex, or background" and is "not limited to those who have had a meaningful involvement with the gang.").

Further, Ms. Rivera-Geronimo's proposed particular social group is not perceived as socially distinct within Guatemalan society. To show social distinctiveness, Ms. Rivera-Geronimo points to data regarding the rampant levels of violence against women in Guatemala and the Guatemalan government's ineffective efforts to prevent that violence. But, even accepting it as true, this evidence shows us only that the Guatemalan government condones violence against women and treats Guatemalan women in abusive relationships as socially distinct. It does not show us that Guatemalan society perceives "Guatemalan women in domestic relationships" the same way. See Matter of W-G-R-, 26 I. & N. Dec. at 216–17 (explaining for a particular social group to be considered "socially distinct," the applicant must present "evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group."). If anything, this evidence demonstrates that Ms. Rivera-Geronimo—by virtue of being a Guatemalan woman—is at greater risk than others for domestic abuse without police intervention. But an increased risk of persecution alone does not give rise to a particular social group. See Castillo-Arias, 446 F.3d at 1193, 1196–98 (holding that members of a particular social group must "share a common characteristic other than their risk of being

12

persecuted" (quotation marks omitted)).  We therefore cannot recognize her particular social group on this basis.  See id.

Because "Guatemalan women in domestic relationships" is not sufficiently particular or socially distinct, the BIA reasonably concluded Ms. Rivera-Geronimo failed to assert a cognizable particular social group.  We therefore deny her petition for review for her asylum claim.

### B.

The BIA found Ms. Rivera-Geronimo was ineligible for humanitarian asylum because she was not a member of a particular social group and thus not a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A).  Ms. Rivera-Geronimo argues the BIA erred in reaching this determination because she is not required to be a "refugee" under the definition set out in § 1101(a)(42) to qualify for humanitarian asylum.  She says humanitarian asylum is available to all persons, irrespective of whether they are part of a cognizable particular social group, if they show "compelling reasons" for it based on "the severity of the persecution suffered" in their native county.

This Court recently held in Perez-Zenteno v. U.S. Attorney General, 913 F.3d 1301 (11th Cir. 2019), that an applicant "must . . . establish that she is a refugee" to be "granted humanitarian asylum."  Id. at 1311 n.3.  To show that an applicant is a "refugee," she must have suffered "past persecution on account of a

13

statutorily protected ground." Id.  These statutorily protected grounds include race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42)(A); see also 8 C.F.R. § 1208.13(b)(1).  As a result, and because Ms. Rivera-Geronimo is not a member of a cognizable particular social group, she is ineligible for humanitarian asylum.  Perez-Zenteno, 913 F.3d at 1311 n.3.

**PETITION FOR REVIEW DENIED.**