[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14038
Non-Argument Calendar
_____

Agency No. A073-639-392


DINESHKUMAR BHOGIL PATEL,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 9, 2019)

Before WILLIAM PRYOR, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Dineshkumar Patel petitions for review of the Board of Immigration Appeals' final order affirming the Immigration Judge's denial of withholding of removal under the Immigration and Nationality Act ("INA") and protection under the United Nations Convention on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). The BIA held that the IJ did not err in denying Mr. Patel's asylum based on inconsistent statements and adverse credibility. After review of the record and the parties' briefs, we deny Mr. Patel's petition.

## I

Mr. Patel is a native and citizen of India. In 1993, when he was about 20 years old, Mr. Patel left India. He arrived in the United States on March 25, 1994. He submitted an application for asylum, claiming that the majority Hindu population of India wanted to "transform India into a pure Hindu State" and the government was not taking measures to deter their efforts to carry out ethnic cleansing. He said that his social work and vocal opposition of the "Hindu Sup[re]macy doctrine" caused him to be singled out, he was beaten and threatened with death, and his home was "attacked and ransacked." An interview was scheduled, but Mr. Patel failed to appear or request to reschedule. The application was deemed abandoned and his file was closed.

In 2015, Mr. Patel was arrested in Marion County, Florida, for several crimes, including the possession and sale of synthetic marijuana. He was convicted and

sentenced to 18 months in prison. In 2017, the Department of Homeland Security began removal proceedings against Mr. Patel and filed a Notice to Appear, charging him with several violations of the INA.

In October of 2017, Mr. Patel filed a new application for asylum, asking for withholding of removal under the INA and protection under the CAT. In support of the application, he stated that he and all his family members, all practicing Hindus, had been threatened with physical violence by members of Muslim groups in India. He also submitted several documents in support of the application: the India 2016 International Religious Report, three news articles, and the 2016 India Human Rights Report.[1]

---

[1] According to the Human Rights Report, police forces in India were overworked, underpaid, and subjected to political pressure, which contributed to corruption, including arbitrary arrest, torture, and forced confessions. In the 1990s, tens of thousands of Hindus fled the Kashmir Valley and other areas because of conflict and violent intimidation, including the destruction of houses of worship, sexual abuse, and property theft by Kashmiri separatists. The laws in India provide for freedom of movement within the country, foreign travel, and emigration and repatriation, which the government generally respects.

The India Religious Freedom Report states that in 2016, the population of India was 1.3 billion with 79.8 percent being Hindu and 14.2 percent being Muslim. The Indian Constitution provides for freedom of conscience and the right of individuals to profess, practice, and propagate religion freely, and prohibits discrimination on the basis of religion. In 6 of the 29 Indian states—including Gujarat—forced religious conversion is punishable by up to three years in prison, and Indian federal law criminalized acts that are motivated by religious enmity. There are reports of hundreds of religiously motivated killings, assaults, riots, restrictions on the right to practice and proselytize religion, discrimination, and property violations, but the groups most frequently targeted were Muslims and Christians. Many reports implicated Hindu cow protection squads as the attackers.

The news articles included (1) one from 1990, describing a clash between Muslims and Hindus that left 93 people dead in three days; (2) one from 2017, detailing several attacks by Hindu vigilantes against Muslims; and (3) one from 2016, explaining that attacks on minority group religions, such as Christians and Muslims, by Hindu extremists were on the rise.

3

In March of 2018, the IJ conducted a merits hearing on Mr. Patel's asylum application. Mr. Patel testified to the following:

Mr. Patel has practiced Hinduism, India's predominant religion, for his entire life. In India, he lived in the Bapunagar area of Saraspur, which is part of the city of Ahmedabad, located within Gujarat state. Most of the population of Bapunagar practices Islam. When Mr. Patel lived there, there was significant conflict between Hindus and Muslims. Specifically, people from both faiths were attempting to forcibly convert members from the other religion. Mr. Patel, along with 15 other people, strongly opposed the Muslims' efforts to try to convert them to Islam and were targeted. As a result, he was beaten several times, and, at one point, someone threatened to kill him. One of the beatings put Mr. Patel in the hospital for at least 15 days, but he does not have any documentation from his stay at the hospital. Mr. Patel said that he called the police, but they were corrupt. They investigated but were unable to solve the crime.

Mr. Patel fled India because he feared that his life was in danger. All of his family members have also left India and live in the United States. Mr. Patel said that he fears returning to India because Muslims are still a majority in Ahmedabad.

When asked about the conflicting information in his first asylum application—specifically, why it said that he was targeted by Hindus and why it made no mention of Muslims—Mr. Patel said that he did not speak a lot of English

4

at that time, and he blamed the error on the attorney who filed the application. Mr. Patel also said that he was afraid of some of the Hindus in India because they are only pretending to be Hindu but are actually Muslims trying to convert Hindus to Islam. He explained that he did not include this detail in his original application because his attorney at the time told him "not to exaggerate with all those issues."

Mr. Patel's father, Bhogilal Patel, also testified. He left India in 1991 and is a naturalized United States citizen. He visited India three years prior to his testimony to attend a wedding in Gujarat. He is also Hindu and explained that, in India, Hindus and Muslims do not get along. He had worked at a milk dairy in an area where there were Muslims, but was threatened with beatings, so he quit. Finally, he testified that Muslims had beaten his son, Mr. Patel, six or seven times, that his son moved to the United States because Muslims were trying to convert him, and he believed that if his son returned to India, he would be killed there.

In an oral opinion, the IJ denied Mr. Patel's application for withholding of removal, as well as his request for protection under Article 3 of the CAT. The IJ ruled that Mr. Patel was ineligible for withholding of removal because she determined that he had been convicted of "a particularly serious crime" within the meaning of 8 U.S.C. § 241(b)(3)(B)(ii). The IJ issued an alternative finding that, even if Mr. Patel were eligible for withholding of removal, he had not shown that he would be persecuted on account of religion if he were to return to India. The IJ

stated that she did not find Mr. Patel credible, citing the discrepancies between his two asylum applications and his testimony, which she described as "non-specific and rambling in nature, [and] overly generalized." The IJ also found the testimony from Mr. Patel's father similarly non-specific. Finally, the IJ determined that Mr. Patel had not established that he was eligible for protection under the CAT. Specifically, she found that Mr. Patel had failed to established past or future persecution on account of his religion because: (1) his religion was the majority religion in India; (2) the laws of India do not prevent him from relocating within the country; and (3) there was no evidence that the police would be unable or unwilling to control the group performing persecutory acts. In reaching this conclusion, the IJ specifically cited information from the reports submitted by Mr. Patel, including the 2016 Human Rights Report and the India 2016 International Religious Freedom Report. Mr. Patel appealed to the BIA.

The BIA dismissed Mr. Patel's appeal, finding no clear error in the IJ's determination that Mr. Patel had not testified credibly. The BIA determined that the IJ's adverse credibility determination was supported by its findings that Mr. Patel's testimony was non-specific and general and directly conflicted the assertions in his first asylum application. The BIA expressly declined to address the IJ's conclusion that Mr. Patel had been convicted of a particularly serious crime. The BIA also agreed with the IJ that Mr. Patel had not "established that he would be tortured within

the meaning of the Convention Against Torture or that a public official would acquiesce to such torture." Mr. Patel timely filed this petition, arguing that the IJ's adverse credibility finding as to his testimony was not supported by substantial evidence.[2]

## II

To be eligible for withholding of removal under the INA, an applicant must show that his "life or freedom would be threatened in [the country of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). The burden of proof is on the applicant to show that he would more likely than not be persecuted if returned to the country of removal. *See id.*

We review a BIA decision as the final judgment, unless the BIA expressly adopted the IJ's decision. *See Ruiz v. Gonzalez.*, 479 F.3d 762, 765 (11th Cir. 2007). Where the BIA either agreed with the IJ's findings or relied on the IJ's reasoning, we review both the BIA and IJ decisions to the extent of the agreement. *See Mu Ying Wu v. U.S. Att'y Gen.*, 745 F.3d 1140, 1153 (11th Cir. 2014). Factual

---

[2] In his opening brief, Mr. Patel seeks to incorporate other arguments that he made in his brief before the BIA, including those addressing the IJ's conclusion that he committed a serious crime. It would be improper for us to consider them without the BIA doing so first. *See Gonzalez v. Thomas*, 547 U.S. 183, 186–87 (2006); *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 17 (2002). Moreover, a party may not incorporate by reference arguments presented below, but must specifically and clearly identify the issues presented for appellate review. *See Four Seasons Hotels & Resorts, B.V. v. Consorcia Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004).

7

determinations made by the BIA are reviewed under the substantial evidence test, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). We must affirm the BIA's factual finding "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *D-Muhumed v. U.S. Att'y Gen.*, 3888 F.3d 814, 818 (11th Cir. 2004) *(quoting Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283–84 (11th Cir. 2001)). For us to conclude that a factual finding should be reversed, we must determine that the record "compels" reversal. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006).

Credibility determinations are factual findings, and thus are reviewed under the substantial evidence test. *See id.* We "may not substitute [our] judgment for that of the IJ with respect to credibility findings." *Id.* (quotation omitted). Reliable testimony may be indicated by "consistency on direct examination, consistency with the written application, and the absence of embellishments." *Id.* While an applicant's testimony "may be sufficient, without corroboration, to sustain his burden of proof establishing eligibility for relief from removal," *id.*, the opposite is also true. "[A]n adverse credibility determination alone may be sufficient to support the denial of an asylum application." *Id.* Nevertheless, the IJ has a duty to consider the other evidence presented by the applicant. *See id.* Moreover, "the IJ must offer

8

specific, cogent reasons for an adverse credibility finding," and "[o]nce an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decisions was not supported by 'specific, cogent reasons[,]' or was not based on substantial evidence." *Id.* (quotations omitted).

To be eligible for CAT relief, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture" is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

§ 208.18(a)(1). Thus, to obtain CAT relief, the applicant must demonstrate that torture would be inflicted by the government or with the government's consent or acquiescence. *See Sanchez*, 392 F.3d at 438.

## III

The record does not compel reversal of the BIA's finding of adverse credibility. The IJ characterized Mr. Patel's testimony as "non-specific" and "general." The IJ also specifically described the discrepancies between Mr. Patel's asylum applications and between his first application and his testimony. In his

original application, Mr. Patel stated that he was beaten and threatened by Hindus. But in his amended application and in his testimony, Mr. Patel said that he was under threat from Muslims because he is Hindu.  When asked about the discrepancies, Mr. Patel first said his lawyer made a mistake, and he also said that sometimes Muslims pretended to be Hindus to try to covert other Hindus (although he did not indicate this in either application).  The IJ considered all of this evidence, including the supplementary reports provided by Mr. Patel, in reaching the adverse credibility determination.  This determination was based on "specific, cogent reasons" and supported by substantial evidence.  Accordingly, Mr. Patel failed to establish his eligibility for withholding of removal.  *See Ruiz*, 440 F.3d at 1255.

With regard to his request for protection under the CAT, Mr. Patel did not provide sufficient, credible evidence to establish that he would more likely that not be subjected to torture "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  § 208.18(a)(1).  Mr. Patel said that he was beaten several times and ended up in the hospital for two weeks.  He reported it to the police, who investigated but were unable to solve the crime.  Although Mr. Patel claimed that the police are corrupt, there is no additional evidence in the record to show that they would be unable or unwilling to protect him from suffering future torture.  *See, e.g., Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (a government does not

10

acquiesce to torture by failing to apprehend criminals).  Accordingly, Mr. Patel has

not met the requirements for protection under the CAT.

## IV

For the foregoing reasons, Mr. Patel's petition is denied.

**PETITION DENIED.**