[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11678
Non-Argument Calendar
_____

Agency No. A206-483-146

MARIA ELENA CERRATO-CHIRINOS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 14, 2020)

Before WILLIAM PRYOR, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Maria Elena Cerrato-Chirinos, a native and citizen of Honduras, petitions for

review of an order of the Board of Immigration Appeals ("BIA") affirming the

denial of her application for asylum.  After thorough consideration, we deny the petition for review.

## I.

In May 2012, Cerrato-Chirinos entered the United States at the Texas border without inspection, admission, or parole.  She then settled in Pompano Beach, Florida.  On May 2, 2014, Cerrato-Chirinos was served with a notice to appear before an immigration judge ("IJ").  The notice to appear charged her with removability under 8 U.S.C. § 1182(a)(6)(A)(i).  This statute provides for removal of any noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.  Cerrato-Chirinos admitted the factual allegations in the notice to appear and conceded the charge of removability.

On May 30, 2017, Cerrato-Chirinos, with assistance of counsel, filed an I-589 Application for Asylum and for Withholding of Removal.  In her I-589, Cerrato-Chirinos recounted how her brother, Juan Ramon Chirinos, was killed by gang members in February 2012 as he was walking to get his bicycle.  Cerrato-Chirinos said she was not present at her brother's murder and did not know which gang was responsible.  She said that witnesses told her the murderers "had gang tattoos."  Cerrato-Chirinos also said that, shortly after the murder, gang members began asking her neighbors about her and her family's whereabouts.  Because of

2

the gang members' expressed desire to "get revenge on Juan's family," she said her "whole family became the target of gang violence" and began living "in hiding." She sought asylum and withholding of removal due to her fear that the gang members will kill her upon her return to Honduras and that the "very corrupt" Honduran police would "protect the gangs" instead of her. Her application did not discuss any other incidents as the basis for this fear. At a hearing before the IJ on October 10, 2017, Cerrato-Chirinos's counsel said she planned to supplement the record in advance of the hearing on the merits of her I-589.

In support of her application, Cerrato-Chirinos submitted her own sworn declaration. In the declaration, Cerrato-Chirinos stated that her brother was murdered outside a church, that she was inside the church at the time of his murder, and that she found his body afterwards. She again said that she knew the men who did this were gang members because eyewitnesses told her that the murderers had gang tattoos. She also made an additional allegation of gang-related violence, saying that, in March 2012, she was deliberately hit by a car while she drove her motorcycle to work. She said that, before she was hit, somebody in the car yelled at her to "stop or else they'd shoot [her]." She submitted medical evidence in support of her claim that the motorcycle crash resulted in scars and other injuries.

3

A hearing on the merits of Cerrato-Chirinos's I-589 was held before the IJ on January 4, 2018. At the hearing, Cerrato-Chirinos testified that she personally saw the gang members running away and that she knew they were members of the Mara 18 gang because they had tattoos of the number eighteen. The IJ discredited this testimony as contradicted by Cerrato-Chirinos's prior statements in her I-589 and supplemental declaration.

The IJ also discredited Cerrato-Chirinos's statement that her motorcycle crash was caused by gang members. The IJ could not square the "gravity and importance" of this incident—which Cerrato-Chirinos indicated was the most significant incident in Honduras that caused her fear of return—with its omission from the I-589. The IJ credited the remainder of Cerrato-Chirinos's testimony but found that she had not established past persecution or an objectively reasonable fear of future persecution. The IJ also found that Cerrato-Chirinos had not met her burden of establishing that Honduran authorities were unable or unwilling to protect her from the alleged persecution or that she could not safely relocate within Honduras, as her parents and sisters have done.

Cerrato-Chirinos appealed the IJ's denial of her I-589 to the BIA. The BIA dismissed the appeal and affirmed the IJ in all relevant respects. The BIA did not reach the question of whether Cerrato-Chirinos suffered past persecution or whether she made out a claim under the Convention Against Torture ("CAT")

4

because she did not raise these issues on appeal.  This petition for review timely followed.

## II.

"When the BIA issues a decision, we review the BIA's decision, except to the extent that the BIA has expressly adopted the IJ's decision."  Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007).  To the extent the BIA "agreed with the findings of the [IJ]," we review both decisions.  Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009).

The BIA's findings of fact, including determinations of credibility and the question of whether the applicant has established persecution on the basis of a protected ground, are reviewed for substantial evidence.  Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007); D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817–18 (11th Cir. 2004).  Under this "highly deferential" standard, "[w]e view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Kazemzadeh, 577 F.3d at 1351 (quotation marks omitted).  The Court "may not substitute its judgment for that of the BIA with respect to credibility findings."  D-Muhumed, 388 F.3d at 818.

The BIA's application of relevant law to fact is reviewed de novo.  Id. at 817.  We "must affirm the BIA's decision if it is supported by reasonable,

5

substantial, and probative evidence on the record considered as a whole." Id. at 818 (quotation marks omitted).

## III.

"To be eligible for asylum, an applicant bears the burden of proving that [she] is a 'refugee' within the meaning of the INA."[1] Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1231 (11th Cir. 2007) (citing, inter alia, 8 U.S.C. § 1158(b)(1)(A)). "A refugee is defined as one who is unable or unwilling to return to his or her home country 'because of [past] persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1202 (11th Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(A)).

Cerrato-Chirinos makes three arguments on appeal. First, she challenges the IJ's adverse credibility determination regarding the motorcycle crash. Second, she argues she has established a well-founded fear of persecution. Third, she seeks to revive her claim that she is a refugee because of past persecution, an argument which the BIA said she abandoned. Because Cerrato-Chirinos has not met her

---

[1] As noted above, Cerrato-Chirinos initially sought withholding of removal under the CAT but did not appeal the IJ's denial of her petition on that ground. As a result, we do not address any arguments on this ground she may have made in the proceedings before the IJ. See Najjar v. Ashcroft, 257 F.3d 1262, 1282 n.12 (11th Cir. 2001).

burden of proving the IJ or the BIA erred in determining any of these issues, we deny her petition for review.

## A.

Cerrato-Chirinos challenges the IJ's finding that her testimony regarding the motorcycle crash was not credible. To rebut this adverse finding, Cerrato-Chirinos must "show that the finding is not supported by specific, cogent reasons or was not based on substantial evidence." Carrizo v. U.S. Att'y Gen., 652 F.3d 1326, 1332 (11th Cir. 2011) (per curiam) (quotation marks omitted). A petitioner's "own testimony can suffice where the testimony is believable, consistent, and sufficiently detailed." Id. (emphasis and quotation marks omitted).

The BIA affirmed the IJ's adverse finding on the ground that Cerrato-Chirinos did not mention the crash in her initial petition for withholding, despite her later statement identifying the crash as the most significant event that happened to her in Honduras. Cerrato-Chirinos argues that the BIA's characterization of the motorcycle crash as a "new allegation" shows the BIA erred by not considering her supplemental statement setting forth the details of the motorcycle crash. But the question is not whether Cerrato-Chirinos timely alleged the motorcycle crash was caused by the gang members; it is whether it was reasonable for the IJ and the BIA to find that this allegation was not credible because of its absence from her initial application. The BIA did not disregard the supplemental statement setting forth

7

Cerrato-Chirinos's recollection of the crash. Rather, the BIA, like the IJ, found that Cerrato-Chirinos's failure to mention this allegation in her initial application cast doubt on the credibility of this assertion. The BIA's characterization of this allegation as "new" does not suggest otherwise.

We conclude the BIA and the IJ provided cogent reasons supported by substantial evidence for this adverse credibility determination. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (upholding adverse credibility determination based on substantial evidence).

### B.

Cerrato-Chirinos also attacks the finding that she has not established a well-founded fear of persecution. An applicant may establish a well-founded fear of persecution by showing she has "a fear of persecution in [her] country of nationality on account of a protected ground, a 'reasonable possibility' of suffering persecution if [she] returns to that country, and that [she] is unable or unwilling to return because of [her] fear." Kazemzadeh, 577 F.3d at 1352 (quoting 8 C.F.R. § 208.13(b)(2)(i)). "An applicant does not have a well-founded fear of persecution if the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . if under all the circumstances it would be reasonable to expect the applicant to do so." 8 C.F.R. § 208.13(b)(2)(ii). The applicant is presumed to carry her burden of proof by showing that the persecution

8

is by a government actor or is government-sponsored, but the presumption can be rebutted by a showing "that, under all the circumstances, it would be reasonable for the applicant to relocate." Kazemzadeh, 577 F.3d at 1352 (quotation marks omitted) (citing 8 C.F.R. § 208.13(b)(3)).

The BIA first affirmed the IJ's finding that Cerrato-Chirinos has not presented a reasonable possibility of future persecution. This finding was based on Cerrato-Chirinos's failure to "present[] any evidence establishing that the gang members who killed her brother have continued to look for her or her family members in the 6 years since she left Honduras." Cerrato-Chirinos does not challenge this finding in her brief, so any objection she might have to it is deemed abandoned. See Najjar, 257 F.3d at 1282 n.12.

The BIA next held that Cerrato-Chirinos has not demonstrated fear of persecution by a government or a government-sponsored group and affirmed the IJ's finding that she has not carried her burden of showing it would be unreasonable for her to relocate within Honduras. On this point, Cerrato-Chirinos says simply that the IJ and the BIA "failed to consider" her testimony and other evidence that her parents have been "living in hiding and in fear" since her brother's murder and the motorcycle crash. But, in fact, the BIA specifically cited to Cerrato-Chirinos's testimony, stating that her claim on this point was not enough to "meet her burden to establish that she could not reasonably relocate within

9

Honduras." The BIA held that this testimony was undermined by the fact that Cerrato-Chirinos's parents continue to live in the same town, that her sisters successfully relocated within Honduras, and that Cerrato-Chirinos did not attempt to relocate within Honduras before coming to the United States. Cerrato-Chirinos has not shown us this conclusion was unsupported by substantial evidence.

Finally, the IJ and the BIA both ruled that Cerrato-Chirinos has not established the government of Honduras would be unable or unwilling to protect her. The BIA noted Cerrato-Chirinos failed to report the murder or the motorcycle crash to local authorities in Honduras, something that "generally is fatal to an asylum claim." See Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1345 (11th Cir. 2007). While the BIA acknowledged that the failure to seek government protection may be excused if the applicant "convincingly demonstrates that those authorities would have been unable or unwilling to protect her," id., the BIA agreed with the IJ that the evidence submitted by Cerrato-Chirinos did not satisfy this requirement.

Cerrato-Chirinos challenges this finding on the ground that she and her family were too fearful to report these run-ins with the gang to Honduran police, which she alleges—and the IJ acknowledged—has "some level of corruption." But Cerrato-Chirinos's only evidence on this point is "background materials" showing government corruption is prevalent in Honduras. This type of general

10

evidence is not enough to show that the police would have been unable or unwilling to assist her.  See Castillo Munoz v. U.S. Att'y Gen., 786 F. App'x 988, 992 n.3 (11th Cir. 2019) (per curiam) (unpublished) ("[W]here, as here, the applicant cites general concerns about bribery as her reason for not seeking out government protection, the agency's decision will ordinarily survive substantial evidence review." (citing, inter alia, Lopez, 504 F.3d at 1345)).

We conclude that the BIA and the IJ had substantial evidence for finding that Cerrato-Chirinos has not established a well-founded fear of persecution.

C.

The BIA did not consider whether Cerrato-Chirinos established past persecution—an alternative method of establishing eligibility for asylum—because she did not present that issue for appeal.  Cerrato-Chirinos now says she did not need to raise the issue on appeal because the IJ made a finding in her favor on this point.  While it is true the IJ said during the merits hearing that the alleged motorcycle attack constitutes past persecution, it is clear he meant that the allegations, if true, would constitute a prima facie case of persecution.  In this case, the IJ did not credit Cerrato-Chirinos's testimony about the motorcycle crash, and clearly decided that she was not eligible for asylum on the basis of past persecution.  Cerrato-Chirinos appealed from the IJ's oral decision but she did not challenge his conclusion that "the past mistreatment of [Cerrato-Chirinos] in her

11

home country does not rise to the level of past persecution." Her failure to challenge this finding on appeal constitutes abandonment of the issue, and we cannot consider it. See Najjar, 257 F.3d at 1282 n.12.

## IV.

For these reasons, Cerrato-Chirinos's petition for review is **DENIED.**