[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12414
Non-Argument Calendar

_____

Agency No. A208-054-441

ARCHIVALDO ANTONIO CHOW DAVILA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 21, 2021)

Before JORDAN, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Archivaldo Antonio Chow Davila seeks review of the Board of Immigration Appeals's ("BIA") final order affirming the immigration judge's denial of his application for asylum and withholding of removal. He argues the BIA did not give reasoned consideration to, or make adequate findings based on, his application for asylum and withholding removal with respect to his showings of past persecution and of the nexus of that persecution to his political opinion. Because substantial evidence supports the BIA's decision, we deny Davila's petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In November 2012, Davila, a native and citizen of Nicaragua, entered the United States through Miami on a Temporary Visitor for Pleasure (B-2) visa, authorizing him to remain in the country through May 3, 2013. Davila overstayed his visa, and in February 2017, the Department of Homeland Security ("DHS") served him with a notice to appear and charged him as removable under 8 U.S.C. § 1227(a)(1)(B). At that time, he applied for asylum and for withholding of removal under both the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture ("CAT").

Davila claimed political persecution in his asylum application. His father was a journalist in Nicaragua and was imprisoned and tortured because of his articles about the government. Davila had refused to join the Sandinista party, and, following this refusal, he claimed that he was harassed, threatened with violence and

2

death, and had all his belongings stolen, by pro-Sandinista gangs, all of which went ignored by police. Because he refused to sign government documents self-identifying as a member of the Sandinista party, the government denied him an identification card, rendering him unemployable throughout the country. Davila also claimed that he feared to return to Nicaragua because of the gangs who worked for the government.

An immigration judge held a merits hearing. Davila testified that government-affiliated gangs would kill him if returned to Nicaragua. He gave three examples of past gang intimidation. In 2006, he was robbed of his shoes at gunpoint by two gang members, which he reported to police who did nothing. In 2010, he was robbed at knifepoint by two gang members who worked for the government. When he reported this incident to police, they said that they had no resources and asked him for money to investigate. In 2011, two gang members broke into his house with weapons, robbed the house, and threatened to kill him and his family if they reported to the police. One of the topics the immigration judge focused on at the hearing was the dilatory nature of Davila filing his application. When the immigration judge asked if there was any reason Davila did not file the application sooner than five years after entering the United States, Davila responded: "I didn't know the immigration laws. I was afraid." Davila also admitted he never sought

out an immigration attorney nor went to an agency as he did not "have the time and money" and had to support his wife and daughter.

In an oral decision following the hearing, the immigration judge found that Davila did not timely file his asylum application, failed to show cause for the late filing, and thus was not entitled to asylum. The immigration judge also analyzed Davila's claims, noting that, while Davila alleged multiple instances of encounters with government-backed gangs in Nicaragua, at no point did he claim that he was physically harmed. Furthermore, the immigration judge found that reporting the incidents to the police diminished Davila's fear of the gang members actually harming him and that Davila did not offer any evidence establishing that the robberies were committed against him "because of" his political views. And because Davila failed to satisfy the lower burden of proof required for asylum, the immigration similarly found he failed to satisfy the standard of eligibility for withholding of removal. The immigration judge also found that Davila was not entitled to CAT relief. Accordingly, the immigration judge ordered Davila removed from the United States to Nicaragua.

Davila appealed to the BIA, where he argued, among other things, the immigration judge did not "give adequate weight" to his testimony that was sufficiently detailed and credible evidence of intimidation, death threats, and multiple robberies at gun- and knifepoint. He also argued the immigration judge's

4

finding that his contacting police was enough to diminish the threat to him and his fear of harm was clearly erroneous.

The BIA dismissed the appeal, affirming the immigration judge's finding that that Davila's asylum application was time-barred. The BIA found that Davila did not provide evidence of Nicaragua's changed-country conditions to justify his untimely application nor provide evidence that he filed his application without delay after the purported changed-country conditions. The BIA also found no clear error in the immigration judge's finding that Davila was not targeted in Nicaragua for harm in the past and would not be targeted for harm in the future on account of any protected ground under the INA. The BIA explained that the evidence reflected that he was simply the "victim of crime" and that he had failed to meet his burden of proof.

Davila now petitions for our review of the BIA's order. We have jurisdiction. *See* 8 U.S.C. § 1252(a)(1).

## II.    STANDARD OF REVIEW

Generally, we review only the decision of the BIA unless the BIA expressly adopted or explicitly agreed with the immigration judge's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). Because the BIA here agreed with the immigration judge's reasoning, we review both decisions.

We review legal conclusions *de novo*. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). We review factual determinations under the highly deferential substantial evidence test. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). "Under the substantial evidence test, we view record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision," and we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc) (quoting *al Najjar v. Ashcroft*, 257 F.3d 1262, 1283–84 (11th Cir. 2001)). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the [agency's] findings." *Id.* Rather, the decision "can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009) (quoting *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005)).

## III.   ANALYSIS

To qualify for withholding of removal, an alien bears the burden of showing either "past persecution in [his] country based on a protected ground," *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (quoting *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003)), or "a future threat to his life or freedom on a protected ground," *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir.

2004) (quoting *Mendoza*, 327 F.3d at 1287).  The INA and DHS regulations establish five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b); *see also Tan*, 446 F.3d at 1375 (holding the alien must show that persecution motivated, at least in part, by a protected ground).  The alien's burden of production is specific and credible evidence showing a clear probability to his life or freedom.  *I.N.S. v. Stevic*, 467 U.S. 407, 424–25 (1984).

Davila raises two arguments on petition for review.[1]  First, he argues that we cannot review the decisions of the immigration judge or the BIA because those decisions were not based on reasoned consideration of the evidence, as the immigration judge simply disregarded the evidence and testimony he provided.  We disagree.  Second, he argues the immigration judge and the BIA erred "in finding that the harm he experienced did not rise to the level of persecution."  Because neither the immigration judge nor the BIA based its determination on this reasoning, this argument is without merit.  Rather, the immigration judge and BIA found that Davila could not establish a nexus between the alleged past harm and one of the five protected grounds.[2]  As for this, we find substantial evidence in support.

---

[1] We note that Davila has abandoned his CAT claim because he does not present any argument in his briefs as to that claim.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

[2] We note that our review is limited to the immigration judge's and the BIA's denial of Davila's withholding of removal claim.  Here, the BIA's denial of the asylum claim was solely on

Davila further contends that the immigration judge did not consider that he had witnessed his attackers at political events in support of the Sandinista party, that he was denied an identity card due to his refusal to support the Sandinista government, and that he and his father were the subject of credible threats due to their political opinions against the Sandinista government. The record, however, contradicts this argument as the immigration judge explicitly considered Davila's testimony and, after doing so, found that Davila did not provide any corroboration for his claim that his father was persecuted by the Nicaraguan government or that he was unemployed and asking for money on the streets due to the government's denial of an identity card.

Moreover, Davila's contention that the immigration judge and the BIA both failed to consider his testimony regarding the robberies in 2006, 2010, and 2011 is also without merit. The immigration judge did consider his testimony, but found that Davila did not provide any credible evidence or testimony that showed these crimes were more than just crimes of happen-chance, i.e., Davila did not establish that he was actually targeted based on a protected ground. Davila even testified that the gang members wore plain clothes and offered no evidence that they were members of the Sandinista political party. Additionally, the BIA expressly agreed

---

the basis that it was time-barred, and we lack jurisdiction to review a denial of an asylum claim on that basis. *See Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).

with the immigration judge's finding that Davila was *not* targeted on account of any protected ground, but instead that he was a victim of ordinary crime. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (reasoning that evidence that shows private violence or merely shows that a person has been the victim of criminal activity does not necessarily constitute evidence of persecution based on a protected ground).

We have reviewed the administrative record, the immigration judge's findings, and the BIA's order. Because substantial evidence supports the denial of Davila's applications, we deny his petition.

**PETITION DENIED.**