[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10968

Non-Argument Calendar

_____

YAN QING FENG,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A216-265-100

_____

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Yang Qin Feng, a native and citizen of China, proceeding *pro se*, appeals an order of the Board of Immigration Appeals affirming an immigration judge's denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Mr. Feng contends primarily on appeal that the BIA and the immigration judge erred when they denied his application due to an adverse credibility finding related to inconsistencies between his hearing testimony, his credible fear interview, and his application.

After review of the parties' briefs and the record, we conclude that substantial evidence supported the adverse credibility finding because there were inconsistencies in the record as to whether Mr. Feng broke a window of a construction equipment when he was protesting the taking of his land by the Chinese government and whether he was beaten by the police and fellow inmates when he was detained after the protest. We therefore deny the petition.

**I**

**A**

Mr. Feng is a native and citizen of China. On October 13, 2017, he crossed the Mexican border smuggled in the trunk of a car and applied for admission to the United States at the San Isidro port

of entry.  He was referred by the authorities to an asylum officer for a credible fear interview because he expressed fear of persecution in China.

During his telephonic credible fear interview, Mr. Feng testified under oath and with the benefit of an interpreter fluent in his native Mandarin language.  He explained that he came to the United States because he was harmed by the Chinese government. He claimed that the Aojian County Government acquired his land by force and without his permission, so he and other villagers gathered "at the gate of the government, to protest, to ask for justice." Mr. Feng stated that he was protesting the government's corruption and the fact that he was offered low compensation for his land.

Minutes after the protest began, the police came and started capturing the protesters because it was illegal to protest.  Mr. Feng explained to the asylum officer that he was taken by the police and locked up for seven days in a small room.  According to Mr. Feng, he was arrested and detained because he tried to stop the construction from starting and "broke the window of the machinery at the site."  After his seven-day detention, Mr. Feng paid a fine for the damage to the construction equipment and was released.

During the interview, the asylum officer asked Mr. Feng if he was ever threatened or harmed by anyone else in China aside from his seven-day arrest.  Mr. Feng responded, "[t]he police just came to my place looking for me from time to time, make me feel like I am under the threat."  The asylum officer then asked Mr. Feng whether, aside from those two incidents, he was ever

threatened or harmed by anyone else, and he said "no." At the end of the interview, the asylum officer summarized Mr. Feng's statements back to him:

> You testified that you were captured by the police for trying to get them to stop taking over your land and damaging the machinery they were [using] and then you had to spend 7 days in jail and pay a fine . . . You fear going back to China because you fear the police will capture you for your participation in the protest.

R. at 258.

Mr. Feng agreed that the summary was accurate, but added that after he was released, the police demanded that he promise that he would not make similar mistakes again. Mr. Feng indicated that he understood the asylum officer's questions, and the interpreter stated that there were no problems understanding Mr. Feng. The asylum officer determined that Mr. Feng was credible and had established a credible fear of persecution based on his political opinion.

**B**

On December 22, 2017, the Department of Homeland Security served Mr. Feng with a Notice to Appear ("NTA"), charging him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as a non-citizen who at the time of entry was not in possession of valid entry documents. Mr. Feng, through counsel, admitted the allegations in the NTA and conceded removability.

Mr. Feng then filed an application for asylum, withholding of removal, and CAT protection. He indicated in his application that his claims were based on a political opinion related to a land dispute and claimed he was mistreated by the Chinese police. On April 9, 2018, an immigration judge scheduled a merits hearing on Mr. Feng's application for June 8, 2018 and set the deadline to submit any supporting documents for May 30, 2018.

## C

At a hearing held over two days before the immigration judge, Mr. Feng, who was represented by counsel and provided an interpreter, testified in support of his application. Mr. Feng reiterated his testimony that in 2017 the Chinese government "falsely took" his land, which his family had owned for a few decades, for a "government project . . . to expand . . . the river canals and also [to] try to clean up the pollution." He described that when he and other villagers protested the Chinese government's actions, the police came and arrested him. According to Mr. Feng, he was charged with interfering with a government function and disturbing the social order. After seven days of detention, he was fined and released, but was not allowed to keep his land.

Mr. Feng testified that after his release, he went with the other villagers to continue protesting. The government tried to arrest the protestors again, but Mr. Feng was able to escape. While Mr. Feng was in hiding, police officers told his wife that he "was doing illegal protesting" and that once he returned, he should "turn

himself in." After hiding for several months, Mr. Feng decided in August of 2017 to leave China.

Mr. Feng explained that after arriving in the United States in October of 2017, his wife told him that the Chinese government had "sent a notice to [his] house" in April of 2018. His wife did not tell him what the notice said. However, in August of 2018, his wife told him that police officers came to his house seeking to arrest him. The police officers told Mr. Feng's wife to ask him to "turn himself in immediately" and that he would be "sentenced to prison." Mr. Feng testified that if he were sentenced to prison in China, he would be "abused and beaten by the police inside the prison cell."

On cross-examination, Mr. Feng was questioned about the details of his protest activity and consequent arrest for interfering with a Chinese government action. Mr. Feng stated that on the day he was arrested, he attempted to stop the government from starting construction. When asked whether he broke a window on a piece of machinery, he replied, "No. I did not do that." The government pointed out that Mr. Feng testified to breaking the window in his credible fear interview, but Mr. Feng could not remember what he had previously testified. The government submitted Mr. Feng's credible fear interview for impeachment purposes, and Mr. Feng's counsel did not object.

The government then cross-examined Mr. Feng about his seven-day detention. For the first time, Mr. Feng stated that he "was abused by the people in that jail." The government again

referenced Mr. Feng's credible fear interview and noted that his testimony was inconsistent because he had never mentioned any physical abuse during his detention. Mr. Feng attempted to reconcile the inconsistency by stating, "[a]t that time, the [credible fear] interview was conducted telephonically. So some questions were not that clear to me and I couldn't know about the questions. Maybe, that's it."

When the immigration judge questioned Mr. Feng about the abuse he suffered while he was in jail, he testified that he was "abused and beaten by the inmates inside the jail when [he] was incarcerated." Mr. Feng also testified that he was beaten by the police during an interrogation. According to Mr. Feng, the police "used a baton to beat [his] legs and [his] arms" and they "slapped [him] on [his] face." He claimed he "was beaten with the police baton for more than ten times during the interrogation." Mr. Feng further testified that once they released him, he went to a small hospital for treatment, where a doctor treated his wounds and gave him a sports medicine cream. Mr. Feng claimed he omitted the physical abuse he endured from his asylum application because he was in detention at the time and did not think it would affect his application.

On redirect, Mr. Feng explained that he was beaten by other inmates because he "did not follow their rules" when they asked him to "wash the bathroom and to do some cleaning." Mr. Feng testified that the abuse stopped once he "called out to officers" for help. Mr. Feng also testified that a police officer told the inmates

to "fix [him] up, to beat [him]." Mr. Feng explained that the initial interrogation when he was first detained lasted around twenty minutes, during which some officers "started beating [him]."

After Mr. Feng's testimony, the government moved for an adverse credibility finding because Mr. Feng's testimony was internally inconsistent with different portions of his testimony, his credible fear interview, and his application. The government also argued that Mr. Feng's application should be denied and he should be removed. According to the government, Mr. Feng had not established a nexus to a protected ground and his claimed harm was either perpetrated by a non-government actor or did not constitute persecution.

Mr. Feng's counsel, however, argued that Mr. Feng was arrested because of his political opinion. Counsel asserted that if Mr. Feng went back to China, he would be arrested and detained. According to counsel, the Chinese police are not after Mr. Feng for his first protest, but for the second protest where he challenged the unfair compensation from the government.

## D

The immigration judge denied Mr. Feng's claims for asylum, withholding of removal, and CAT relief. The immigration judge first excluded the untimely documentary evidence provided by Mr.

Feng because it was submitted after the deadline had passed and no motion explaining the late submission had been filed.[1]

The immigration judge then entered an adverse credibility finding because Mr. Feng's testimony "differ[ed] wildly from his statements to the asylum officer during his credible fear interview and [wa]s inconsistent with his [asylum application]." The immigration judge found that Mr. Feng's hearing testimony and his credible fear interview testimony regarding "who broke the window on the construction equipment" were "absolutely opposite of one another," because Mr. Feng stated during his credible fear interview that he broke the window but denied doing so at the hearing.

The immigration judge further found that Mr. Feng's hearing testimony—where he stated he was harmed by police and/or other detainees—was inconsistent with his credible fear interview testimony where he was asked three times if he had been physically harmed but never said he was beaten by police officers or fellow

---

[1] Mr. Feng's documentary evidence consisted of (1) his personal statement, (2) his identification card, (3) his household registry, (4) his marriage certificate, (5) the birth certificates of his two children, (6) a fine receipt for violating China's family planning policy, (7) a fine receipt for disturbing the social order, (8) two notices from his village's committee, (9) photos of the government confiscating his land, (10) a *New York Times* article detailing the dispute between farmers and local officials, (11) another *New York Times* article reporting that one of the farmers was sentenced to three years imprisonment for disturbing the social order, (12) a written statement from his wife, and (13) the State Department's 2017 Human Rights Report on China.

inmates.  The immigration judge "considered and expressly re-ject[ed]" Mr. Feng's explanation that "he did not understand, that he was confused, that it was on the telephone, and that he did not understand the interpreter."  The immigration judge explained that Mr. Feng confirmed he was able to hear and understand the inter-preter and that he confirmed to the asylum officer that the sum-mary of his credible fear interview was accurate.  The immigration judge also noted that Mr. Feng omitted from his written asylum application any claim that he was harmed by fellow detainees. Therefore, the immigration judge determined that an adverse cred-ibility finding was sufficient to deny Mr. Feng's application.

Notwithstanding his adverse credibility finding, the immi-gration judge made three alternative findings on the merits in case the BIA or this court disagreed with his credibility finding.  Specifi-cally, the immigration judge alternatively found that Mr. Feng (1) did not establish past persecution, (2) failed to show a well-founded fear of future persecution, and (3) failed to establish a nexus to a political opinion.  The immigration judge additionally found that Mr. Feng did not meet the higher burden of proof for withholding of removal because he had not met the lower burden for asylum, and that he did not establish a likelihood of torture by or with the acquiescence of the Chinese government for CAT relief.

## E

Following the denial of his application, Mr. Feng appealed to the BIA.  Mr. Feng argued that the immigration judge erred in denying his claims and, in particular, in his findings that he had not

testified credibly and that his documentary evidence was untimely. The BIA, however, expressly adopted and affirmed the immigration judge's denial of Mr. Feng's claims based on an adverse credibility finding.

The BIA explained that because the adverse credibility finding was dispositive of Mr. Feng's application, it declined to address the denial of relief and protection on the "merits." The BIA noted that during the hearing before the immigration judge, Mr. Feng "denied having broken a window of some construction equipment during the protest . . . but, during his credible fear interview, he indicated that he did break a window during the protest." The BIA further noted that Mr. Feng "during his credible fear interview did not report any physical harm or abuse at the hands of the authorities during his 7-day detention nor did he testify on direct examination that he was physically harmed during detention." But the BIA noted that on cross-examination, he stated he was abused while in jail and that he was beaten by his fellow detainees.

The BIA determined that Mr. Feng "did not persuasively resolve or explain the credibility issues raised by the [immigration judge], despite having been given an opportunity to do so." The BIA disagreed with Mr. Feng's assertion that the inconsistencies in his testimony were "minor," concluding that they were "matters that go to the heart of [his] claim with regard to the nature, circumstances, and severity of the harm that he allegedly suffered."

Additionally, the BIA concluded that the immigration judge did not err in excluding Mr. Feng's untimely documents from the

record.  The BIA found Mr. Feng's explanation—that the documents were filed late because they were not received until after their due date—unpersuasive because he did not explain why the documents could not have been obtained earlier or how those documents would have resolved the credibility concerns.

Finally, the BIA concluded that the credibility determination was fatal to Mr. Feng's claims for withholding of removal and his request for CAT protection.  The BIA thus dismissed Mr. Feng's appeal.

Mr. Feng now petitions this court for review.

## II

"When the BIA issues a decision, we review the BIA's decision, except to the extent that the BIA has expressly adopted the [immigration judge]'s decision." *Lyashchynska v. U.S. Att'y. Gen.*, 676 F.3d 962, 966–67 (11th Cir. 2012) (quoting *Ruiz v. Gonzales,* 479 F.3d 762, 765 (11th Cir. 2007)).  "In that instance, we review the [immigration judge]'s decision as well."  *Id.* at 967 (citation omitted).  If the BIA's decision is supported by reasonable, substantial, and probative evidence when the record is considered as a whole, we must affirm. *See id.*  "To conclude the BIA's decision should be reversed, 'we must find that the record not only supports the conclusion, but compels it.'"  *Id.* (quoting *Ruiz,* 479 F.3d at 765).  "Factual determinations, including credibility determinations, are reviewed under a substantial evidence standard, which provides that the decision can be reversed only if evidence compels a reasonable fact finder to find otherwise."  *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270,

1276 (11th Cir. 2009) (internal quotations omitted) (citing *Sepulveda v. U.S. Att'y Gen.,* 401 F.3d 1226, 1230 (11th Cir. 2005)).

Mr. Feng is proceeding without counsel.  So we liberally construe his *pro se* filings.  *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

### III

Mr. Feng raises several arguments on appeal.  *See* Petitioner's Br. at 18–58.  First, he challenges the immigration judge's exclusion of his documentary evidence, arguing that the documents were filed just a few days late.  *See id.* at 18-21.  Second, he argues that the immigration judge and the BIA erred in discrediting his testimony due to apparent inconsistencies because he was consistent, detailed, and credible about the harm he suffered and could suffer in China.  *See id.* at 21–38.  Third, he contends that the immigration judge and the BIA erred in finding that he had not established past persecution and a well-founded fear of future persecution.  *See id.* at 38–46.  Finally, he challenges the denial of his claim for withholding of removal and claim for CAT relief.  *See id.* at 53–58.[2]

As an initial matter, we do not consider Mr. Feng's arguments challenging the merits of the immigration judge's alternative holdings that he failed to meet his burden of establishing his

---

[2] Mr. Feng's initial brief is nearly identical to the brief he filed before the BIA. *Compare* R. at 57–93, *with* Petitioner's Br. at 17–58.  Mr. Feng did not file a reply brief.

eligibility for asylum, withholding of removal, and CAT relief.  We generally "review the BIA's decision as the final judgment unless the BIA expressly adopted the [immigration judge]'s decision," but issues not reached by the BIA are not properly before us.  *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).  The BIA here expressly declined to "address the denial of relief and protection on the merits," so the immigration judge's alternative holdings on the merits are not properly before us.  R. at 5.  *See also Kumar v. U.S. Att'y Gen.*, No. 22-10171, 2022 WL 17246663, at *4 (11th Cir. Nov. 28, 2022) ("The BIA expressly declined to reach the IJ's alternative holdings, however. That means we review both the BIA's and IJ's decisions regarding the adverse credibility ruling, but because the BIA did not reach the IJ's alternative holdings, they are not before this Court.").

We therefore only address Mr. Feng's arguments as to the two issues considered by the BIA—(1) the exclusion of his documentary evidence, and (2) the adverse credibility determination. We consider each argument in turn.

**A**

Federal regulations provide immigration judges with administrative control over the removal hearing.  *See Tang*, 578 F.3d at 1276 (citing 8 C.F.R. § 1003.31(c)).  An immigration judge "may set and extend time limits for the filing of applications and related documents and responses thereto, if any.  If an application or document is not filed within the time set by the [immigration judge], the opportunity to file that application or document shall be

deemed waived." *Id.* (internal quotation marks omitted). We therefore review for abuse of discretion an immigration judge's decision to exclude corroborating documents that were untimely filed. *See id.* ("We conclude that the [immigration judge]'s decision to exclude evidence offered for submission after a court-ordered filing deadline is discretionary.").

Here, during a hearing on April 9, 2018, the immigration judge set the deadline for the cross-service of the supporting documents of both parties for May 30, 2018. *See* R. at 108. Although the government timely filed its supporting documents, Mr. Feng did not file his documents until June 4, 2018. *See id.* at 176–177. The immigration judge thus excluded Mr. Feng's documentary evidence as untimely. *See id.* at 178. Given our precedent, we conclude that the immigration judge did not abuse his discretion because Mr. Feng filed his supporting documents after their due date. *See Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1306 n.3 (11th Cir. 2009) (holding that an immigration judge did not abuse its discretion in refusing to admit evidence after a deadline imposed under 8 C.F.R. § 1003.31(c)).

Mr. Feng argues that the immigration judge erred in excluding his documentary evidence because the documents "were filed just a few days late" due to issues receiving the documents from China and other administrative delays. *See* Petitioner's Br. at 18–21. We find that argument unconvincing. There is no indication in the record that Mr. Feng, who was represented by counsel at the time, filed any motion requesting an extension of the deadline or

describing any difficulties in obtaining the documents. As the immigration judge explained, even when Mr. Feng's attorneys tried to re-file the untimely documentary evidence at the continued hearing on October 2, 2018, "[n]o motion to accept untimely documents was filed, and no motion to explain why these documents were submitted months after the filing deadline was made." R. at 109. Under these circumstances, the immigration judge did not abuse his discretion in excluding Mr. Feng's untimely filed documents. *See Kueviakoe*, 567 F.3d at 1306 n.3 ("The [immigration judge] did not abuse its discretion by refusing to consider any of Kueviakoe's untimely exhibits.").

## B

"An applicant bears the burden of satisfying the [immigration judge] that [his] testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." *Lyashchynska*, 676 F.3d at 967.[3]

---

[3] An applicant for asylum must meet the Immigration and Naturalization Act's definition of a refugee. *See* INA § 208(b)(1), 8 U.S.C. § 1158(b)(1)(A). A "refugee" is "any person who is outside any country of such person's nationality" who is unwilling to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 1101(a)(42)(A). To meet that definition, the applicant must, "with specific and *credible evidence*, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause future persecution." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (quotation marks omitted and emphasis added).

An immigration judge may base a credibility finding on the totality of the circumstances, including (1) the demeanor, candor, or responsiveness of the applicant; (2) the inherent plausibility of the applicant's account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; and (5) the consistency of the statements with other record evidence, including State Department reports. *See* INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). Additionally, an adverse credibility determination may be based on inaccuracies, inconsistences, and falsehoods, whether or not they relate to the "heart" of the applicant's claim. *Id.*

**1**

We have previously explained that an immigration judge "must offer specific, cogent reasons for an adverse credibility finding." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). The immigration judge and the BIA satisfied this requirement because they did not simply give general reasons for denying Mr. Feng's application for relief. They both specifically referred to Mr. Feng's internal inconsistencies in different portions of his testimony, his credible fear interview, and his asylum application. In particular, there are two main inconsistencies the immigration judge and the BIA relied on: (1) Mr. Feng's inconsistent testimony about whether he broke the window of the construction equipment, and (2) Mr. Feng's inconsistent testimony about whether he had been physically harmed by the police and/or other detainees. The immigration judge and the BIA also based their adverse

credibility determinations on Mr. Feng's failure to resolve or explain the inconsistencies despite being given the opportunity to do so.

In sum, the BIA and the immigration judge provided specific, cogent reasons for their adverse credibility finding.  *See Forgue*, 401 F.3d at 1287.

**2**

Given that the adverse credibility finding was based on specific, cogent reasons, Mr. Feng bears the burden of showing that it is not supported by substantial evidence.  *See Tang*, 578 F.3d at 1277 ("If the court explicitly determines that the alien lacks credibility, the court 'must offer specific, cogent reasons' for the finding.  The burden then shifts to the alien to show that the credibility decision was not supported by "specific, cogent reasons" or was not based on substantial evidence.") (citing *Forgue,* 401 F.3d at 1287).  Mr. Feng, however, fails to meet that burden because substantial evidence supports the adverse credibility finding.

First, Mr. Feng's testimony at the hearing was inconsistent with his testimony to the asylum officer during his credible fear interview.  For instance, during his credible fear interview, Mr. Feng told the asylum officer that he broke the window on the construction equipment.  *See* R. at 254.  But, during the hearing, he denied having broken the window.  *See id.* at 214.  Additionally, despite having been asked multiple times, Mr. Feng never told the asylum officer during his credible fear interview that he was physically harmed and beaten by the police and other detainees when he was

arrested after the protest. *See id*. at 254. Mr. Feng, however, testified for the first time during the hearing that he was beaten by the police and other detainees after he was arrested. *See id*. at 217.

Second, Mr. Feng's testimony at the hearing before the immigration judge, which took place over multiple days, was internally inconsistent. For example, during his direct examination, Mr. Feng did not mention that he suffered any physical abuse during the time he was detained after he was arrested. *See id*. at 209–213. However, when the government cross-examined Mr. Feng about his seven-day detention, he testified that he was physically abused while in jail. *See id*. at 217.

Third, Mr. Feng's testimony was inconsistent with his asylum application. Although Mr. Feng testified during the hearing that he was harmed by his fellow detainees when he was arrested, he omitted that information from his written asylum application. *See* R. at 405–406. Indeed, Mr. Feng wrote on his asylum application that he was "detained, interrogated, and beaten by the Chinese police." *Id*. at 405. Mr. Feng, however, never wrote that that he had been beaten or harmed by fellow detainees at the prison. And, although he attempted on redirect to develop a theory that the Chinese police were encouraging or instigating the fellow detainees to beat him, he never wrote that on his asylum application either. *Compare* R. at 230–231, *with* R. at 405.

In sum, considering that substantial evidence supported the immigration judge's and the BIA's specific, cogent reasons for finding that Mr. Feng was not credible, we cannot say that the record

compels reversal of the adverse credibility determination. *See Xia v. U.S. Atty. Gen.*, 608 F.3d 1233, 1240 (11th Cir. 2010) (holding that substantial evidence supported an adverse credibility determination where the applicant's testimony "included at least one internal inconsistency" and "one omission"); *Chen v. U.S. Att'y. Gen.*, 463 F.3d 1228, 1232–33 (11th Cir. 2006) (holding that substantial evidence supported an adverse credibility determination where there were various inconsistencies).

**3**

Mr. Feng raises several arguments attacking the adverse credibility finding, but they are all unpersuasive.

Mr. Feng contends that his testimony at the hearing regarding the broken window was a "minor inconsistency." *See* Petitioner's Br. at 21. We disagree. The discrepancies in Mr. Feng's testimony are hardly "minor." As the BIA observed, "whether or not [Mr. Feng] broke a window during a protest (and was therefore arrested), and whether or not he was beaten by the authorities and by fellow detainees while under arrest are matters that go to the heart of [his] claim with regard to the nature, circumstances, and severity of the harm that he allegedly suffered." R. at 5. In any event, an immigration judge can consider *any* inaccuracy or falsehood, regardless of whether it "goes to the heart of the applicant's claim, or any other factor." 8 U.S.C. § 1158(b)(1)(B)(iii). *See Chen*, 463 F.3d at 1233 (rejecting the petitioner's argument that the inconsistencies in the record were trivial and irrelevant to the dispositive issues).

Additionally, Mr. Feng argues that he did not mention the physical abuse he suffered because neither his attorney nor the asylum officer asked him questions that would have elicited a response that he had been physically harmed. *See* Petitioner's Br. at 29–31. We remain unconvinced. As the immigration judge noted, Mr. Feng, was asked "three times" by the asylum officer in his credible fear interview if he had been physically harmed, but he never said he had been. *See* R. at 115. And at the hearing, Mr. Feng had ample opportunity to testify during direct examination about the physical harm he had endured, but he never did. *See* R. at 209–213. Thus, Mr. Feng's attempt to deflect the blame for his inconsistent testimony is unpersuasive.

Likewise, Mr. Feng's contention that he did not mention the physical abuse during his credible fear interview because he did not think of it at that moment and because he was nervous and confused, is unavailing. *See* Petitioner's Br. at 31–32. An applicant's tenable explanation for an inconsistency or implausibility will not necessarily warrant reversal, particularly where corroborating evidence is lacking. *See Chen*, 463 F.3d at 1233. Here, Mr. Feng's explanation falls flat because when the asylum officer read Mr. Feng the summary of his testimony, he not only agreed with it, but also made an addendum correcting the asylum officer. *See* R. at 258. As the immigration judge correctly observed, this demonstrated that Mr. Feng "understood the interpreter, that he understood the interview, he participated in it meaningfully, and understood it well enough to make corrections to the asylum officer's statements at the end of the interview." R. at 116. Even months after his credible

fear interview, when any alleged confusion and nervousness had sufficient time to fade, Mr. Feng still failed to include the physical abuse he sustained from the other detainees in his asylum application. *See* R. at 405.

Finally, Mr. Feng argues that if his documentary evidence would have been admitted, it would have "overcome any perceived inconsistencies or weaknesses in his testimony." Petitioner's Br. at 36–37. This argument fails because, as the BIA explained, Mr. Feng "does not argue or even suggest that the documents which he sought to introduce past the court-imposed deadline rehabilitate his credibility or resolve the credibility concerns which served as a basis for denying relief in this case." R. at 6. Mr. Feng's argument also fails because "[a] denial of relief [ ] can be supported solely by an adverse credibility determination, especially if the alien fails to produce corroborating evidence." *Lyashchynska*, 676 F.3d at 967. *See also Mohammed v. U.S. Att'y Gen.,* 547 F.3d 1340, 1347 (11th Cir. 2008) ("Th[e] language in [8 C.F.R. § 208.13] plainly indicates that if the trier of fact either does not believe the applicant or does not know what to believe, the applicant's failure to corroborate his testimony can be fatal to his asylum application.").

## IV

The BIA did not err in dismissing Mr. Feng's appeal challenging the immigration judge's denial of his application for asylum, withholding of removal, and CAT relief based on the adverse credibility finding.

**PETITION DENIED.**